In re ACADIANA ELECTRICAL
SERVICE, INC., Debtor.

In re Harold LEMOINE and Marie
Wellen Fontenot Lemoine, Debtors.

Bankruptcy Nos. 483–00098–LO–7,
483–00114–LO–7.

United States Bankruptcy Court,
W.D. Louisiana.

April 4, 1986.

See also 52 B.R. 609.

*Findings of Fact and
Conclusions of Law*

RODNEY BERNARD, JR., Bankruptcy
Judge.

This matter comes before the court on a motion to dismiss the trustee in this case filed by Acadiana Bank. A hearing was held on January 6, 1986, and memoranda have been submitted on behalf of Acadiana Bank and the trustee, Charles N. Wooten. Upon consideration of all of the arguments and briefs of counsel, the following shall constitute the findings of fact and conclusions of law of this court.

### I.

First it will be necessary to examine the proceedings and events which have culminated in this motion. These two bankruptcy cases were filed early in 1983. The individual debtors, the Lemoines, were the sole stockholders in the corporate debtor, Acadiana Electrical Supply, Inc. [AES]. The Lemoines first filed in Chapter 11, and that case was converted to Chapter 7 on February 1, 1984. Pursuant to Bankruptcy Rule 1015, which provides for joint administration of related cases, this court appointed Charles N. Wooten trustee of both estates. Acadiana Bank, [Bank], the movant herein, is a creditor of both estates, holding an assignment of the corporate debtor's accounts receivable, and personal guarantees from the individual debtors.

In administering these two estates, the trustee collected, or attempted to collect the accounts receivable in which the Bank had an interest. These accounts receivable have been a cause of dissention and litigation almost from the outset of this case. First, the Bank filed a motion for removal of trustee on April 18, 1985, alleging that the trustee had failed to administer assets of the estate of AES, namely the above-mentioned accounts receivable. A hearing was held, and based upon the evidence adduced at that hearing, the Bank's motion was denied. That decision was appealed to the district court, and was affirmed by Judge Dewey (*See* Civ. Action No. 85–2420, U.S. Dist. Court, W.D.La.1985). Next the Bank filed a motion for adequate protection and distribution of funds, seeking primarily to have the trustee disburse those funds received through liquidation of the accounts receivable in which the Bank had an interest. That motion was granted, this court ordering the trustee to disburse such funds, retaining only 5% to cover administrative expenses. A motion for reconsideration of that order filed by the trustee was later denied. The Bank also filed a motion for contempt against the trustee on November 27, 1985, alleging the trustee's failure to comply with the order of disbursement. After an extensive hearing that allegation was found to be groundless, and the motion was denied.

On September 20, 1985, the trustee filed two adversary proceedings, one in the AES case and one in the Lemoine's case, each seeking to subordinate the Bank's claim to that of the general unsecured creditors. It is those actions which indirectly form the basis of this second motion to dismiss the trustee, filed on October 21, 1985.

The court has gone into the proceedings in these cases in great detail in order to attend to several preliminary matters. First, the Bank has specifically alleged that the adversary proceedings mentioned above were filed only in order to retaliate against the Bank for filing the first motion seeking removal of the trustee. The Bank has already filed one motion to remove the trustee which was found to be without

merit by two courts, and a motion for contempt which was also found to be groundless, and now files a second motion to dismiss the trustee alleging the *trustee's* retaliatory motives. Since the Bank's actions are also open to an interpretation of retaliatory motives, it strikes this court that those who live in glass houses should refrain from throwing stones. This court will carefully consider, and decide this motion on its merits, without any regard to the possible motives of *either* party in *any* phase of this case. As regards the two adversary proceedings, the court has no intention of probing the merits of those actions, and will consider them only so far as it is necessary to decide this motion. Thus, we move, at long last, to the merits of this motion to dismiss the trustee.

## II.

The basis of this motion to dismiss trustee is an alleged conflict of interest. It should be noted that the legal standard to be applied in considering a motion to remove a trustee for conflict of interest is a determination of actual injury to the estate. *In re Concept Packaging Corp.*, 7 B.R. 607 (Bankr.S.D.N.Y.1980), *citing In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir.1965); *See also U.S.A. v. Derryberry (In re Hartley)* 50 B.R. 852 (Bankr.N.D. Ohio 1985). As stated by the court in *In re REA Holding Corp.*, 2 B.R. 733 (S.D.N.Y. 1980), removal is proper only where fraud or actual injury to the estate exists, or where the estate will suffer more from the discord created by retaining the present trustee than would be suffered from a change in administration. *Id.* at 735, *citing Freeport Italian Bakery, supra.*

The reasoning underlying this motion is rather convoluted but the court will attempt to set that out as clearly and concisely as possible. The Bank's assertions are based on certain transfers from AES, the corporate debtor, to the Bank in the months preceeding bankruptcy. The bank asserts that these transfers constituted preferential payments to the Lemoines as

guarantors of the corporate debt. The Bank contends that the trustee has a duty to sue to recover that alleged preference—but that he can't because he represents the Lemoine's estate as well. Thus, it is alleged that a conflict of interest exists.

Under section 547 of the Bankruptcy Code, (11 U.S.C. §§ 101 *et seq.*) the trustee in bankruptcy can "avoid" or recover a transfer by the debtor

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Section 547(f) provides that the debtor is presumed to be insolvent on and during the ninety (90) days immediately preceeding the filing of the petition in bankruptcy. Thus, the trustee may avoid transfers of the debtor's property made on the eve of bankruptcy which diminish the debtor's estate. Congress' purpose in enacting this preference legislation was twofold. First, by allowing the trustee to avoid such transfers shortly before bankruptcy, creditors would be discouraged from dismantling a debtor and precipitating a slide into bankruptcy. "Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is

required to disgorge so that all may share equally." Analysis of H.R. 8200, H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6138. *See Barash v. Public Finance Corp.* 658 F.2d 504, 508 (7th Cir.1981). Section 547(b)(5) is the central provision of the preference section because it requires a determination that the creditor in question received more than other creditors of the same class would receive in liquidation. When a creditor is thus "preferred", assets available to distribute to creditors are diminished. Therefore, the creditor must disgorge the "preference" in order to insure equality of distribution. 4 *Collier on Bankruptcy* ¶ 547.35 (15th ed. 1985).

■ It is quite true that under section 550 of the Bankruptcy Code a trustee can recover the value of a preferential transfer from the initial transferee or from an entity which benefitted by the transfer. In many cases, a guarantor of a debt, although not the initial transferee of a preferential payment, receives the benefit of that payment through a reduction in liability on the guarantee. Thus, section 550 gives the trustee the option of recovering from someone other than the direct transferee. That provision essentially enables the trustee to reach the "deep pocket" in a case. The trustee must elect to sue either the initial transferee *or* the beneficiary of the transfer, because section 550(c) states that the trustee is entitled to only one "satisfaction" of the transfer.

■ The Bank grounds its allegation of a conflict of interest on the assertion that an action to recover such an indirect preference from the Lemoines should be brought, and yet cannot be brought by this trustee. This court finds that assertion to be without merit. The trustee has, nor did he ever have, such a cause of action, because in order to recover an *indirect* preference, there must have been a *direct* preference to the initial transferee. *Kapela v. Newman,* 649 F.2d 887 (1st Cir.1981); *Armstrong v. Marine Bank (In re Prescott)* 51 B.R. 751 (Bankr.W.D.Wis.1985). In this case, there was no preference to the initial

transferee, the Bank, because the Bank is, and was, fully secured. (By "fully secured", the court means that the amount of the collateral exceeds the amount of the claim. A partially secured creditor *can* be preferred). The Bank, naturally enough, does not dispute that it has such status. It is abunduntly clear that a creditor who is fully secured cannot receive a preference, because he will receive no more than he would in a Chapter 7 liquidation. A fully secured creditor will receive the full amount of his claim, even in a Chapter 7. 11 U.S.C. § 547(b)(5); *See also Braunstein v. Eastern Airlines Employees Federal Credit Union. (In re Fitzgerald)* 49 B.R. 62 (Bank.D.Mass.1985); *Prescott, supra,* and other cases too numerous to cite. Section 547(b)(5) goes to the essence of preference litigation: was the creditor "preferred". When a creditor is fully secured, the estate available to distribute to unsecured creditors is not diminished by payments to that creditor, because payments "free up" equity in the collateral which can then be liquidated for unsecured creditors. In contrast, a partially secured creditor can be preferred because the payments to him reduce the unsecured portion of his debt, but do not reduce his interest in the collateral. In other words, a payment to a fully secured creditor reduces the creditor's interest in the collateral, so that the collateral can then be used to pay unsecured creditors. It does *not* reduce the estate available to distribute to creditors. A "preference" prefers one creditor over others, allowing him to receive more than his share. Thus, since a fully secured creditor will receive the same amount regardless of whether he receives cash payments before bankruptcy, or the actual collateral after bankruptcy, he cannot, by definition, receive a "preference".[1] By the same token,

when there has been no diminution of assets available for distribution to unsecured creditors, there can be no recovery from a guarantor. *Kapela, supra; Prescott, supra.* Section 550(a) states that *"to the extent that a transfer is avoided* under section ... 547 ... the trustee may recover ... from the initial transferee of such transfer or the entity for whose benefit such transfer was made."* Thus, if a transfer is not avoidable as against the initial transferee, its value cannot be recovered against anyone else. In the case at hand, there has never been any allegation by either party that the Bank was not fully secured. If the Bank was secured, there was no possibility of recovery of a preference against anyone. Therefore, it is clear that the Bank's assertion that a conflict of interest exists because the trustee could or should have sued the guarantors is without merit. The Bank has offered no argument to refute the authority of *Kapela* and *Prescott,* and section 550, requiring a direct preference upon which to predicate the recovery of an indirect preference. There is not, and never has been, a cause of action under section 547 against the Lemoines as guarantors. As stated above, the standard for dismissing a trustee is a finding of a real and substantial conflict of interest. The court finds that in this case there was never any potential for conflict because there was never a preference cause of action against either the Bank or the Lemoines. Even assuming, for the sake of argument, that there was a preference action against the Bank which gave rise to a possible cause of action against the Lemoines, this court would still find no actual conflict of interest existant in this case. Section 550 states that the trustee *may* proceed against an indirect transferee, not that he must. As mentioned above, the

---

**1.** In response to the trustee's contention that a preference action against the Bank never existed because the Bank was fully secured, the Bank argues that in 1983, before Article 9 of the U.C.C. was codified in La.Rev.S. 9:3107C(4) a creditor did not have an automatic security interest in proceeds. Thus, the Bank states that it did not have a security interest in the *actual funds* it received. However, the Bank misun-

derstands the trustee's position. It is not necessary that the creditor receive exactly the collateral that it holds. The point is the creditors *fully secured status*—i.e., that because of his security, the creditor will receive the full amount of his claim. Whether he receives payments in cash or in kind is irrelevant to that status.

trustee is entitled to only one recovery of a preferential transfer. Section 550 allows him to reach a "deep pocket"—someone who is able to pay the amount of the transfer. It is left to the trustee's discretion to determine from whom he will be most likely to recover.

■ In this case, had there been a preference, it would have been ludicrous to expect the trustee to sue the Lemoines (who were themselves in bankruptcy) for an indirect preference when the Bank (a solvent entity) received the direct preference. And, even had the trustee done just that, he could have only made a claim against the Lemoine's bankruptcy estate. That claim would then be completely offset by the resulting claim by the Lemoines' estate against the corporate debtor, because payment by a guarantor gives the guarantor a claim against the principle obligor. Thus, the trustee would have recovered nothing had he pursued a cause of action against the Lemoines. Failing to file such an action cost the AES estate nothing. There being no possibility of actual harm to the estate, there can be no conflict of interest.

The Bank makes an issue of the trustee's duty to treat all creditors fairly, and it is true that the trustee must represent the estate for the benefit of all creditors. That duty, however, does not extend to ignoring a cause of action against one creditor when the majority may benefit. By the same token, the trustee is not required to bring spurious lawsuits for uncollectable judgments. The trustee's duty is to recover money to distribute to creditors. He is not concerned with abstract concepts of justice when there is no possibility of recovery for the estate. In fact, bringing suit against the Lemoines, which would cost the AES estate fees and costs, when no recovery could result, would be a breach of the trustee's duties. Assuming, *arguendo*, a preference action did exist, there is still no actual harm to the estate, and therefore no actual conflict of interest.

Finally, it must be emphasized that the adversary proceedings filed by the trustee against the Bank in this matter are *not* for the recovery of preferential transfers as repeatedly alleged by the Bank. They are subordination suits under Section 510(c), seeking to subordinate the Bank's debt to that of other creditors. "The concept of equitable subordination, as developed by case law, is that a claim may normally be subordinated only if its holder is guilty of misconduct". 3 Collier on Bankruptcy ¶ 510.05(2) (15th ed. 1985). The transfers referred to as preferential by the Bank may be evidence of the Bank's misconduct, but they are not themselves preferential, because the bank was fully secured.[2]

### Conclusion

By reason of the foregoing, this court finds no actual conflict of interest in these cases. Therefore, the motion to dismiss trustee is denied. As a final note, this court is confident that in the future, in this case as well as in others, counsel for the bank as well as the trustee and his counsel will conduct themselves with the professionalism, dignity, and gentlemanliness of which this court knows they are capable. A judgment consistent with this opinion will be signed upon submission.

**2.** The Bank also argues that a conflict could arise should the Bank file a third party claim against the Lemoines. The court rejects this assertion for several reasons. First, the issue was not raised and argued in the Bank's initial Motion and Memorandum, but only in response to the Trustee's memorandum. Second, such a claim has not been filed, and thus a real conflict does not exist. Third, since a subrogation action is punitive in nature, this court fails to see how such a claim would benefit the bank. A showing of another's inequitable conduct will not lessen the Bank's responsibility for its own misconduct, if any. Finally, subrogation of the Lemoine's claim (if any) will not affect either estate, nor will it benefit the Bank, because that claim has no priority in any case. In other words, there is no claim behind the Lemoines to which their claim could be subrogated. Thus, again, there would be no real harm to either estate on which to ground removal of the trustee.