In re Rex R. SCOGGINS and Gloria
G. Scoggins, Debtors.

Bankruptcy No. 686–08716–R7.

United States Bankruptcy Court,
D. Oregon.

July 15, 1992.

---

Michael A. Grassmueck, Medford, Or., trustee.

G. Jefferson Campbell, Jr., Medford, Or., for trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court upon the Motion to Modify Order Regarding Fees for Trustee and Trustee's Attorney (the motion) filed on behalf of G. Jefferson Campbell, Jr., P.C. (trustee's attorney). The motion seeks to modify this court's order entered July 31, 1991 (the order) allowing fees requested by trustee's attorney in part and denying the balance of the fees requested. In actuality, the motion seeks merely to modify the order concerning the fees allowed for trustee's attorney since there is no request contained in the motion to alter this court's ruling as it pertains to the fees of the trustee.[1]

A hearing was held on the motion on January 27, 1992 at which time this court orally denied the motion. The court indicated, however, that the oral ruling would be supplemented by a written opinion.

Transcripts of the court's rulings concerning the fees of the trustee's attorney have been ordered. A transcript of the hearing of July 23, 1991 (which gives rise to the order) was filed August 9, 1991. A transcript of the hearing of January 27, 1992 (the hearing denying the motion) was filed May 18, 1992.

This opinion is intended to supplement and expand upon the court's ruling at the hearing of January 27, 1992.

## BACKGROUND

This case was commenced when the debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 5, 1986. The case quickly converted to a Chapter 7 proceeding on November 5, 1986. Michael A. Grassmueck, Inc. was appointed as the Chapter 7 trustee in this case. On November 10, 1986, the trustee applied for the appointment of trustee's attorney to act as his attorney in this case. The application was approved by an order appointing trustee's attorney to act as such on November 17, 1986. The trustee's final report was not filed until March 13, 1991, more than four years later.

The notice of the trustee's final account was mailed by the Clerk of this court to all creditors and other interested parties on March 19, 1991. No objections to the final report were filed by any interested party. Concern about the length of time spent administering this case and the cost effectiveness of certain litigation pursued on behalf of the estate led this court, however, to convene a hearing, sua sponte, to review the fees sought by both the trustee and the trustee's attorney.

As a result of a hearing held herein on July 23, 1991 (the fee hearing), this court allowed the fees and expenses applied for by the trustee. In addition, the court allowed trustee's attorney to be reimbursed for all of the amount of the expenses applied for by trustee's attorney during this case. The court further allowed trustee's attorney fees in the sum of $5,927.08 and

---

1. The court has allowed all of the fees requested by the trustee in this matter, including any expense reimbursement.

ordered (based upon a finding that trustee's attorney had been overpaid due to prior interim orders of the court) that trustee's attorney repay to the estate the sum of $1,706.47. Finally, the court ordered that if the repayment was not made by October 23, 1991 that the estate would have judgment against trustee's attorney and that trustee be directed to execute thereon.

On August 12, 1991 trustee's attorney filed the motion seeking to eliminate the requirement that trustee's attorney repay the sum of $1,706.47 to the estate. The motion was heard on January 27, 1992 at which time the court orally denied the motion.

### ISSUES

Distilled to its essence, the motion gives three reasons for this court to do so. First, trustee's attorney argues that the court's notice of the fee hearing did not adequately inform it of the possibility that trustee's attorney might have to disgorge some fees already awarded by prior interim orders. Second, it argues that G. Jefferson Campbell, Jr. had a reasonable excuse for not personally attending the fee hearing. Thus, the court was hampered in not having complete information on which to enter the order regarding fees. Third, the court was in error in its analysis of the facts of this matter, particularly in its analysis of two adversary proceedings regarding an automobile. The first two matters address the procedural basis for a modification, the third addresses modification on its merits.

### DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 United States Code unless otherwise indicated.

*Trustee's attorney has not provided this court with a procedural basis to modify its order of July 31, 1991:*

■ Trustee's attorney first argues that the notice of the fee hearing did not adequately inform the firm of the possibility that the court might order a disgorgement of some fees previously allowed on prior interim orders. This argument is frivolous on its face. The notice of the July 23, 1991 fee hearing provides in pertinent part:

Based upon the notice of trustee's final account, the court has decided to hold a hearing for the purpose of reviewing the fees of the trustee and the trustee's attorney herein, G. Jefferson Campbell. *This review will include all fees applied for and those previously allowed on prior interim applications.*

Any party wishing to be heard in support of or in opposition to the fees requested may appear at the hearing. (emphasis added).

The notice clearly implies that disgorgement might be possible. Trustee's attorney received the notice. The firm was represented at the hearing, by Michael Smith, an associate attorney, who argued in favor of the fees sought by trustee's attorney.

■ The second procedural argument given for a modification is that G. Jefferson Campbell, Jr. was the primary attorney in the firm of trustee's attorney who was responsible for services rendered in this case. He was unable to attend the fee hearing, accordingly, this court was hampered in reaching its decision.

Mr. Campbell details the reasons why he was unable to appear at the fee hearing in the Affidavit of G. Jefferson Campbell, Jr., dated August 9, 1991 filed with the motion on August 12, 1991. From a review of the affidavit, it appears that Mr. Campbell became the coach of the Medford American Little League Red Division All–Star baseball team in June, 1991. The District 6 All–Star Tournament championship game, to which his team had advanced, was scheduled to be held on July 22, 1991. Due to a lightning storm it was suspended and resumed the following day, July 23, 1991. Based on the times and distances involved, Mr. Campbell had a choice, attend the fee hearing or attend the baseball game. He chose to attend the game. He sent Michael Smith, an associate attorney in his firm to attend the hearing in his absence.

While this court applauds Mr. Campbell's dedication to baseball and to his team, he made a choice to send Mr. Smith to attend the fee hearing.

Furthermore, Mr. Smith attended the fee hearing and represented the interests of

the firm. Mr. Campbell talked to Mr. Smith on the phone about the hearing and met with him on the morning of the hearing about "some of the more pertinent aspects of the legal services rendered in the subject bankruptcy case." Affidavit of G. Jefferson Campbell, Jr., dated August 9, 1991, page 2, lines 14 & 15. In addition, trustee's attorney did not ask this court to postpone the fee hearing.

Accordingly, the fact that Mr. Campbell chose not to attend the fee hearing does not afford his firm an opportunity to have a "second bite at the apple" and to have this court reconsider and modify its earlier order.

*The court's earlier order was correctly decided.*

In the alternative, however, even if this court were to consider the motion on its merits, this court believes that it correctly decided the amount of fees to be awarded to trustee's attorney in the July 31, 1991 order. Some comment on this is appropriate.

■ This court has an independent duty to examine the fees sought by professionals serving a bankruptcy estate. *Grassmueck v. Zamsky, (In re EZ Feed Cube Co., Ltd.)*, 123 B.R. 69 (Bankr.D.Or.1991); *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985). This duty to review fees exists even if there is no objection by any other party. *In re Leedy Mortgage Company, Inc.*, 126 B.R. 907 (Bankr. E.D.Penn.1991).

■ This review may require the disgorgement of fees previously awarded upon an interim request for fees.

The Bankruptcy Code specifically provides for the award of interim compensation. 11 U.S.C. § 331. The purpose of interim compensation is to alleviate economic hardships that would otherwise visit court appointed officers committed to finance extended engagements. *2 Collier on Bankruptcy ¶ 331.01 (15th ed.).* Because interim awards are interlocutory and often require future adjustments, they are *"always* subject to the court's reexamination and adjustment during the course of the case...."* *2*

*Collier on Bankruptcy ¶ 331.03 (15th ed.)* (emphasis added);

*Continental Illinois National Bank & Trust Company of Chicago v. Charles N. Wooten, Ltd., (In re Evangeline Refining Company)*, 890 F.2d 1312, 1321 (5th Cir. 1989).

In accord see *Four Seas Center, Ltd. v. Davres, Inc., (In re Four Seas Center, Ltd.)*, 754 F.2d 1416 (9th Cir.1985); *Callister v. Ingersoll–Rand Financial Corporation, (In re Callister)*, 673 F.2d 305 (10th Cir.1982); *In re Valley Forge Plaza Associates*, 119 B.R. 471 (E.D.Penn.1990).

The Bankruptcy Code requires the trustee to "... collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interest of parties in interest." § 704(1). When necessary, and with the court's approval, the trustee "... may employ one or more attorneys ... or other professional persons ... to represent or assist the trustee in carrying out the trustee's duties under this title." § 327(a). When so employed the trustee's attorney (or other professional) is entitled to, "... reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the *value* of such services, the time spent on such services, and the cost of comparable services other than in a case under this title ..." § 330(a)(1) (emphasis added). Such compensation is not to be awarded, however, without limitation, *Estes & Hoyt v. Crake, (In re Riverside–Linden Investment Co.)*, 925 F.2d 320 (9th Cir.1991).

■ During the four plus years that this estate was being administered, the trustee pursued a number of assets including numerous parcels of real property, non-exempt household goods, and other matters related to the court by Michael A. Grassmueck on behalf of the trustee at the fee hearing. See generally, *Transcript of July 23, 1991 hearing, commencing page 10, line 19, ending page 19, line 25.* According to Mr. Grassmueck, the estate was successful in a number of particulars including the recovery of some large IRA

accounts that the debtors had thought would be exempt. In addition, a careful review of all of the files connected with this matter indicates that a number of adversary proceedings were prosecuted on behalf of the estate.

In general, it can be said that the trustee and the trustee's attorney were successful in creating some assets for the benefit of unsecured creditors in this case. After expressing some concern about the length of time required to administer this case, the court allowed (at the fee hearing) all of the fees and expenses requested by the trustee, all of the expenses requested by trustee's attorney and all of the fees requested by trustee's attorney except for services rendered in two adversary proceedings concerning the same automobile. With respect to those adversary proceedings this court found the services of trustee's attorney had not provided any value or benefit to the estate and that they had not been provided in a cost effective manner. Accordingly, this court held that no fees should be awarded for services performed on the two adversary proceedings in question.

More specifically, on October 15, 1987 an adversary proceeding was commenced on behalf of the trustee, as plaintiff, naming the debtors and their daughter, Trisha Scoggins, as defendants. In this adversary proceeding the trustee-plaintiff sought to avoid the transfer of a 1986 Pontiac Fiero automobile by the debtors to their daughter as a fraudulent transfer under § 548. The case was submitted to the court upon stipulated facts.

On May 13, 1988, an order was entered dismissing this adversary proceeding with prejudice based upon cross motions for dismissal filed by the parties. It appeared that trustee's attorney had failed to insert, in the stipulated facts, one of the elements of plaintiff's prima facie case, namely that the debtors were insolvent at the time the automobile was transferred or that they became so as a result thereof.[2] It appears that the failure to obtain a stipulation as to the insolvency of the debtors at the time of the alleged transfer was an oversight on the part of trustee's attorney as he was concentrating on other issues in the case. Nonetheless, a mistake was made.

Due to this error, the trustee-plaintiff had simply failed to prove his prima facie case, therefore, this adversary proceeding could never result in any form of judgment except for a judgment in favor of the defendants.

At the fee hearing, it developed that trustee's attorney was seeking the sum of $653 in fees related to the first adversary proceeding on the automobile. *See Transcript of July 23, 1991 hearing, page 23, lines 2–5.* Due to the error set forth above, this court concluded that the value of such services was zero and awarded no attorney's fee.

Undaunted by the failure in the first adversary proceeding, a second adversary proceeding was filed concerning the same facts on December 7, 1988. This case was commenced by the filing of a complaint prepared on behalf of the trustee by trustee's attorney. The defendants answered the complaint, filing counterclaims seeking to have Mr. Grassmueck removed as a panel trustee and seeking sanctions against both Mr. Campbell and Mr. Grassmueck for violations of Bankruptcy Rule 9011.

At this point, David B. Mills was retained as special counsel for the estate to extricate trustee and trustee's attorney from counterclaims. After a settlement conference, this second adversary proceeding was settled.

In general, the settlement provided that the estate would receive one-half of the value of the automobile, which turned out to be slightly over $1,300, that approxi-

---

**2.** Section 548(a) provides in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily– ...

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred or became insolvent as a result of such transfer or obligation; ...

mately $1,200 would be paid to the debtors for a disputed tax refund and that the counterclaims would be dropped.

Special counsel received more than $5,000 for his services in the case. The trustee stated at the fee hearing, "Mr. Mills, I think did a good job of extricating counsel, the trustee, and the estate, ..." *Transcript of July 23, 1991 hearing, page 17, lines 4 & 5.*

At the fee hearing, this court found that trustee's attorneys were seeking fees of $2,969 in connection with this second adversary proceeding. *See Transcript of January 23, 1991 hearing, page 26, line 22 & 23.*

This court is of the opinion that trustee's attorney over-litigated the alleged fraudulent transfer of the vehicle. In short, the litigation had not been pursued in a cost-effective manner. The trustee himself had estimated the value of the vehicle at $11,000. *See Transcript of July 23, 1991 hearing, page 14, lines 16–19.* While the submission of a controversy concerning the transfer of the vehicle on stipulated facts was commendable, once the case had to be dismissed due to the error or oversight of trustee's attorney, this court believes that the second adversary proceeding concerning the vehicle should not have been filed.

Clearly, trustee's attorney was bound to consider whether or not the probable cost of legal services or litigation would be disproportionately large in relation to the maximum probable (not possible) recovery. *See Unsecured Creditors' Committee v. Puget Sound Plywood,* 924 F.2d 955 (9th Cir.1991). As the court stated in *Riverside–Linden Investment Company, supra,* "... when a cost benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals, investigation is unwarranted." 925 F.2d at 322.

Here, the court explained in its ruling that trustee's attorney should have con-

sidered the probable recovery for the estate as opposed to the maximum possible recovery which, in any event, would not exceed $11,000. In addition, trustee's attorney knew that the adversary proceeding would be vigorously defended.[3] Due to the earlier activities undertaken on behalf of the estate, trustee's attorney should have known that the filing of the second adversary proceeding concerning the vehicle, after dismissal of the first adversary might produce counterclaims.[4]

In the end, the ultimate settlement of this matter was a complete disaster for the estate. While this court would agree that it is improper to judge the results with perfect 20/20 hindsight, it appears obvious that reasonable counsel should have know that pursuing this litigation would not result in a substantial benefit to the estate in light of the probable cost of litigation and the need to defend against foreseeable counterclaims.

In addition, this court notes that trustee's attorney spent a considerable amount of time researching the doctrine of res judicata to see if the second adversary proceeding could even be filed. Without belaboring the obvious, such research would not have been necessary had trustee's attorney not made an error in the first adversary proceeding. In addition, the cost of all of this legal research should have been taken into account in deciding whether to pursue the matter further. Even the trustee stated: "When we get to the point then where the ball is fumbled is in the adversary proceeding of *MAG v. Trisha Scoggins, et al. Transcript of July 23, 1991 hearing, page 16, lines 17–19.*

In short, this court concluded that trustee's attorney should be allowed no fees for prosecuting the second adversary proceeding since a cost benefit analysis should have indicated that the only parties likely

---

**3.** This case involved a novel legal issue, whether debtors' daughter had given reasonable equivalent value as the debtors had promised her the vehicle if she got good grades in high school. They ordered the vehicle for her after she obtained a 4.0 grade point average for a period of one year.

**4.** At the July 23, 1991 hearing the trustee explained at length the ill-will held by the debtors against the trustee concerning the estate's success on the IRA accounts and other matters. *See, Transcript, commencing page 16, line 17 to page 17, line 9.*

to receive any funds from this litigation were the trustee and/or his professionals.

On motion to modify, trustee's attorney urges this court to reconsider its ruling with respect to these two adversary proceedings. They argue, first, that the parties agreed to submit the first adversary proceeding to the court for its decision upon stipulated facts. Trustee's attorney failed to obtain a stipulation to a key element of the trustee's case: the insolvency of the debtors at the time of the transfer. The firm argues that this arrangement was mandated by a global settlement reached among the parties. Both the parties were obligated to negotiate in good faith. This, they argue, obviated the mistake in failing to get an agreement to one essential element of the case.

Mr. Campbell did not refer the court to any document in the file to support this argument. The court's own review revealed the existence of "Documents Evidencing Compromise and Settlement of Disputed Claims" filed April 15, 1987. It suggests that the debtors and the trustee would attempt to submit the controversy about the vehicle to the court upon stipulated facts. There is nothing in the settlement agreement, however, that required the debtors or their attorney to stipulate that the debtors were insolvent at the time of the transfer. The failure to include this in the stipulation was clearly a mistake on the part of the trustee's attorney.

The intent of the Bankruptcy Code is to provide the applicant with compensation for the value of the services rendered based upon the cost of comparable services other than in a case under the Bankruptcy Code. § 330; H.R.Rep. No. 595, 95th Cong., 1st Sess 329–330 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. In a non-bankruptcy case attorneys would not expect to be compensated for services rendered where the attorney made a mistake and the services, therefore, did not benefit the client. Accordingly, the court sees no reason to modify its earlier order based upon this assertion.

Concerning the second adversary proceeding, Mr. Campbell urges that this court should not require that the trustee and his professionals consider the possibility of counterclaims when initiating litigation, since to do so would have a chilling effect on litigation pursued for the benefit of the estate.

In this case much ill-will developed over the trustee's successful efforts to obtain, for the benefit of the estate, the debtors' IRAs and other items. Put simply, the debtors were very angry over this. It was reasonably foreseeable that they would grow even more angry after they had obtained a dismissal of the first adversary proceeding concerning the vehicle, *with prejudice* when a second nearly identical case was filed.

■ As a general rule, the court would be inclined to agree with Mr. Campbell that the possibility that such claims might arise should not prevent the trustee from pursuing legitimate claims which might lead to a worthwhile recovery for the estate. In order to estimate the probable recovery and to figure out if it will be cost-effective for the estate to pursue the litigation, however, the trustee must consider if there are foreseeable counterclaims that will be asserted. If that causes the trustee to decide that a case cannot be brought *in a cost-effective manner,* so be it.

Mr. Campbell next argues that the decision to file the second adversary proceeding was Mr. Grassmueck's, he simply did what his client instructed. Trustee's attorney was under an ethical obligation to follow those instructions. This court does not agree. First, reading the motion, it appears that the decision to refile was based on the recommendation of counsel, Mr. Campbell. Second, if the court's reading of the motion is incorrect, and if Mr. Campbell did not believe that it was appropriate to file the second adversary, he should have so informed his client. If Mr. Grassmueck continued to insist that it be filed, contrary to the judgment of his attorney, then trustee's attorney might have been advised to simply withdraw as attorney for the trustee, or at least recommend that the trustee secure a second legal opinion.

It must be remembered that the trustee is not like a private client. If an attorney's private client wishes to pursue litigation

which may not be cost-effective (but is ethically and legally permissible) he is only wasting his own money. The trustee is a fiduciary. If he pursues such litigation, he is spending the estate's money, money which should inure to the benefit of creditors.

Finally, Mr. Campbell argues that this court is adopting a punitive posture by saddling trustee's attorney with the cost of special counsel. Since it appears that special counsel's primary duties were to extricate the trustee and the trustee's attorney from personal liability, such a decision may have been justified. Here, however, a careful reading of the court's ruling makes it clear, on its face, that this court did not saddle trustee's attorney with the cost of special counsel.

This court has allowed to trustee's general counsel all expense reimbursement sought and all fees requested except for the services rendered in the two adversary proceedings described above. During the course of this case trustee's attorney has filed six interim fee requests plus a final fee application bringing the total amount of fees requested to the sum of $9,047.85. After disallowing the services rendered in the two adversary proceedings, trustee's attorney was allowed $5,927.08. That figure would have been somewhat less had the cost for fees allowed to David Mills been off-set against trustee's attorney's fees.

## CONCLUSION

This court does not believe that it is appropriate to modify its earlier order of July 31, 1991 setting fees for trustee's attorney in this case. A slight modification will be made to allow the attorneys an additional time to reimburse the sum of $1,706.47 to the estate.

This opinion constitutes the court's findings of fact and conclusions of law supplementary to those contained in the court's oral ruling of January 27, 1992. An order consistent herewith shall be entered.