In re Ainsley H. BEAN, Debtor.

Richard J. McCord, as Chapter 7 Trustee for the Estate of Ainsely H. Bean, Plaintiff/Respondent,

v.

Joan Nurse Agard, Lynette Nurse, Rossel Simeon and Premier Mortgage Corporation d/b/a PMC Mortgage Co., Defendants/Appellants,

and

Ainsely H. Bean, Defendant.

No. 98 CV 6370 FB.

United States District Court, E.D. New York.

July 18, 2000.

Michael D. Brofman, Certilman, Balin, Adler & Hyman, LLP, East Meadow, NY, for Plaintiff/Respondent.

Michelle S. Feldman, Godsberg Zankel & Golden, P.C., Garden City, NY, for Defendants/Appellants.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

Defendants/Appellants Joan Nurse Agard, Lynette Nurse, Rossel Simeon (the "Purchasers") and Premier Mortgage Corporation d/b/a PMC Mortgage Co. ("PMC") (collectively "defendants" or "appellants") appeal from a judgment of the bankruptcy court dated July 30, 1998 (Holland, J.), in favor of plaintiff/respondent Richard J. McCord, as the Chapter 7 Trustee (the "trustee") for the Estate of Ainsley H. Bean ("Bean" or the "debtor"), which: (1) set aside the sale of a residence by Bean to the appellants as an unauthorized post-petition transfer; (2) adjudged the appellants to be liable to the trustee in "an amount equal to the fair market value of the property," to be determined "upon further application to the [bankruptcy] [c]ourt"; (3) directed the appellants to turn over the property to the trustee; (4) declared PMC's mortgage on the property to be void and discharged of record.[1]

---

1. The judgment was predicated on an under-lying order which granted the trustee's mo-tion for summary judgment and denied the

The trustee admits that the transfer of the property did not result in any damage to the bankruptcy estate. He contends, nonetheless, that it was appropriate to bring this action to obtain a windfall for the estate, as reflected by the bankruptcy court's judgment, by punishing the purchasers for violating the bankruptcy law's proscription against unauthorized post-petition transfers. The Court disagrees. Accordingly, it reverses the judgment in its entirety and dismisses the complaint. In so doing, the Court holds that under the simple, straightforward facts of this case, bringing this action was a gross abuse by the trustee of the exercise of his powers, and advises the bankruptcy court against compensating the trustee and his counsel for their services in this litigation.

## BACKGROUND

The facts are taken from the parties' respective summary judgment submissions. In all relevant respects, they are undisputed. On September 5, 1997, Bean contracted to sell the home, located in Cambria Heights, Queens County, to the purchasers for $165,000.[2] On October 21, 1997, he filed a Chapter 11 bankruptcy petition. It was converted to a Chapter 7 proceeding on December 23, 1997. That same day, title closed. The purchase price was principally financed with a $164,520 mortgage from PMC.

At closing, the purchasers' attorney was in possession of a title report which in its Bankruptcy Search section noted a Chapter 11 bankruptcy filing in Bean's name. It listed his address to be in Amityville, not Cambria Heights. The parties do not dispute that the information contained in the Bankruptcy Search referenced the subject bankruptcy proceeding. Whether the preparer of the title report or the title closer mistakenly believed that the bank-

ruptcy was for a different Bean is not disclosed in the record. For whatever reason, the bankruptcy was not listed as a title objection. Moreover, the word "omitted" was written on each Bankruptcy Search page, presumably by the title closer. It is not known from the record to what extent, if at all, the purchasers or their attorney read the title report or had actual knowledge of Bean's bankruptcy.

With the proceeds of the sale, Bean satisfied two mortgages totaling $87,-761.65, one with Dollar Dry Dock/Emigrant Savings for $87,163.39, the other with Chevy Chase Bank FSB for $598.26; paid a broker's commission of $9,990,[3] and paid city and state transfer taxes of $2,310. Bean thereafter turned over the net proceeds of $59,949.35 to the trustee.

Nevertheless, the trustee subsequently commenced this action pursuant to § 550(a) of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"), and moved for summary judgment seeking recovery of the property as an unauthorized post-petition transfer under § 549(a) of the Code, payment of its fair market value, and cancellation of the PMC mortgage. The purchasers and PMC, as defendants, cross-moved for summary judgment, seeking dismissal of the complaint. On July 30, 1998, the bankruptcy court granted the trustee's motion, denied the defendants' cross-motion and, on that same date, entered the judgment which is the subject of this appeal.

The trustee has conceded on appeal that the bankruptcy court erred in ordering both a turnover of the property and a judgment for its fair market value. He opts to let the purchasers keep their home, seeking only affirmance of that part of the judgment awarding the trustee the property's fair market value. However, at oral

---

2. The purchasers were "first time home buyers." Transcript of Hearing, held before Judge Marvin Holland, July 15, 1998, at 2. appellants' cross-motion for summary judgment.

3. The trustee advises that he has recovered the broker's fee in a separate action. See Transcript of Oral Argument before the Court ("Tr."), September 29, 1999, at 28–29.

argument, counsel for the trustee made two significant concessions: (1) that the $165,000 purchase price was the fair market value of the property,[4] *see* Tr. at 11, 14; (2) that if the trustee had sold the property, he would not have realized more than the approximate $60,000 net proceeds, representing the equity, which Bean, the debtor, turned over to him. *See* Tr. at 16–17.[5] When the Court inquired of the trustee's counsel as to the reason for bringing this action since there did not appear to be any damage to the estate, counsel stated that it was "unquestionably punitive." Tr. at 37. In that regard, he believed that it was the trustee's duty "to enforce the code as a policeman." Tr. at 6–7.

Appellants contend that the judgment should be reversed because: (1) although the purchasers' attorney was in possession of the title report, the purchasers did not read it; thus, they had no knowledge of the pending bankruptcy and are entitled to the protection afforded by the bankruptcy code to good faith purchasers; (2) in any event, the purchasers paid fair consideration for the property, and the estate was not damaged.

## DISCUSSION

### I. Standard of Review

This Court reviews the bankruptcy court's "conclusions of law *de novo*, and findings of fact under a clearly erroneous standard." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990). In matters committed to the discretion of the bankruptcy court, the bankruptcy court's decision is reviewed for abuse of discretion. *See In re Blaise*, 219 B.R. 946, 949–50 (2d Cir. BAP 1998) (citation omitted). The bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or upon clearly erroneous factual findings. *See id.* (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)) (other citations omitted). "A bankruptcy court also abuses its discretion if the reviewing court has a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached." *Id.* (citation omitted).

### II. Avoidable Transfer

"In furtherance of the power to collect property of the estate, the trustee is empowered with extraordinary abilities to avoid and recover various liens and transfers ...." *In re Haugen Constr. Serv., Inc.*, 104 B.R. 233, 239 (Bankr. D.N.D.1989) (citing 11 U.S.C. §§ 544, 545, 547, 548, 549 and 550). Under § 549(a) of the Code, all post-petition transfers of property of the bankruptcy estate which occur after the commencement of the bankruptcy case and are not authorized thereunder, as in the present case, may be avoided by the trustee, subject to certain exceptions.[6] One such exception is

---

4. The trustee has stipulated with the appellants "that he will only look to an undertaking of Commonwealth Land Title Insurance Company in the sum of $165,000 to satisfy the judgment." Brief of Plaintiff–Respondent, at 11.

5. This concession was based on the assumption that the Dollar Dry Dock/Emigrant Savings and Chevy Chase FSB mortgages were legitimate. The trustee has not conducted any investigation in respect to these mortgages, *see* Tr. at 15, and the banks have not been named in this, or any other, litigation to set aside the mortgages as fraudulent. Obviously, the trustee does not seriously question their legitimacy.

6. 11 U.S.C. § 549(a):

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

Section 550(a) gives the trustee a mechanism for recovering transferred property from the transferee in transactions that were avoided under § 549(a).

§ 549(c), which protects certain good faith purchasers of real property who have no knowledge of the pendency of a bankruptcy proceeding.[7]

 The term "knowledge" is not defined in the Bankruptcy Code or in its legislative history. Although decisional law is relatively sparse, and the Second Circuit has not spoken on the issue, the courts have uniformly determined that constructive knowledge or inquiry notice precludes invocation of § 549(a)'s good faith purchaser exception. *See In re Nordic Village*, 915 F.2d 1049, 1055 (6th Cir. 1990), *overruled on other grounds, United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (knowledge imputed to transferee when bank check noted "remitter" and debtor's name); *In re Wolverton Assocs.*, 909 F.2d 1286, 1296 (9th Cir.1990) (knowledge requires only inquiry notice); *Smith v. Mixon*, 788 F.2d 229, 232 n. 2 (4th Cir.1986) (knowledge requirement is satisfied if the transferee "knew of facts that would lead a reasonable person to believe that the property transferred was recoverable"); *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897–98 (7th Cir.1988) (knowledge is an awareness of facts which a reasonable transferee should have known); *Brown v. Harris*, 96 B.R. 957, 962 (Bankr.W.D.Mo.1989) (citing *Evans v. Robbins*, 91 B.R. 879, 886 (Bankr.W.D.Mo. 1988)) (§ 549(c) is construed to include "constructive knowledge," which is "knowledge of such facts or circumstances that would ordinarily cause a prudent person exercising the reasonable diligence expected of him to inquire and learn the critical facts").

 In the present case, the purchasers' attorney, as the recipient of the title report, is chargeable with actual notice of its contents. *See United States v. Orozco–Prada*, 636 F.Supp. 1537, 1543 (S.D.N.Y. 1986) ("a title report may demonstrate a grantee's actual knowledge of the facts contained therein"). The information contained in the Bankruptcy Search section of the title report was sufficient to put the attorney on inquiry or constructive notice as to the existence of a possible title problem. Although the purchasers claim that they never read the title report, they are nonetheless charged with knowledge of its contents since an attorney's actual or constructive knowledge is imputed to the client. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir.1994) (" '[a client] has notice of a fact if his [attorney] has knowledge of the fact, reason to know it or should know it, or has been given a notification of it' ") (quoting Restatement (Second) of Agency § 9(3) (1958)); *L. Smirlock Realty Corp. v. Title Guarantee Co.*, 70 A.D.2d 455, 421 N.Y.S.2d 232, 238 (2d Dep't 1979) (agent's knowledge of title report is imputed to purchaser); *see also Winstead v. First Tenn. Bank N.A., Memphis*, 709 S.W.2d 627, 633 (Tenn.App.1986) (notice to attorney of cloud on title is notice to purchaser; "[i]f one who is in possession of all material facts, either actually or constructively, proceeds with a purchase of realty, notwithstanding such knowledge, such a person cannot thereafter recover on the basis of fraud, misrepresentation or concealment of the information to which all parties had equal access."). Therefore, as a matter of law, the purchasers cannot invoke the good faith exception of § 549(c).

---

7. 11 U.S.C. § 549(c):

The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

However, it does not necessarily follow that the trustee was duty-bound to bring this avoidance action.

## III. The Avoidance Action

### General Principles Governing Trustee's Duties

Sections 549(a) and 550(a) of the Code, whose underlying collective purpose is to "restore the estate to the financial condition it would have enjoyed if the transfer had not occurred," *In re Centennial Textiles, Inc.,* 220 B.R. 165, 176 (Bankr.S.D.N.Y.1998) (citation omitted), must be read in conjunction with § 704(1) of the Code, which requires the trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." *See In re Combined Metals Reduction Co.,* 557 F.2d 179, 197 (9th Cir.1977) ("equity tolerates in bankruptcy trustees no interest adverse to the trust"); *In re Carla Leather, Inc.,* 44 B.R. 457, 472 (Bankr.S.D.N.Y.1984) (quoting *Rife v. Ruble,* 107 F.2d 84, 86 (6th Cir.1939))(trustee's duties include "expeditiously liquidating the estate and avoiding all unreasonable expense either in its preservation or distribution"); *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 353, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (trustee must maximize value of the estate); *In re Martin,* 91 F.3d 389, 393 (3d Cir.1996) (citing 4 Collier on Bankruptcy ¶ 704.01 (15th ed.1993)) ("[I]t is the trustee's duty to both the debtor and creditor to realize from the estate all that is possible for distribution among creditors.").

The trustee's duty to act in the best interest of the bankruptcy estate does not include an obligation to punish debtors, let alone others, for punishment's sake. "That is the purpose of the criminal law, not the Bankruptcy Code." *In re Verdi,* 241 B.R. 851, 859 (Bankr.E.D.Pa.1999); *see, e.g.,* 18 U.S.C. § 152(1) (making con-

cealment of assets from bankruptcy trustee a criminal offense). This does not mean that the trustee and the bankruptcy court are expected to permit abusive or fraudulent conduct to go unchecked. Indeed, they have a wide range of powers to rein in such conduct. *See, e.g.,* 11 U.S.C. § 727 (grounds for denying discharge, including fraudulent conduct by debtor); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) ("[d]ebtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings"—collecting examples); *In re Barbieri,* 199 F.3d 616, 621–22 (2d Cir. 1999) (collecting examples of protections to prevent abuse); *In re Gucci,* 126 F.3d 380, 390–91 (2d Cir.1997) (trustee may avoid sale of estate property if debtor and purchasers colluded to affect price); *In re Attanasio,* 218 B.R. 180, 184 (Bankr. N.D.Ala.1998) (bankruptcy case may be dismissed for "substantial abuse"); *In re Rich,* 202 B.R. 107, 108 (Bankr.C.D.Ill. 1996) (fully secured creditor may request that court deny debtor's discharge when debtor "behaves obstructively or fraudulently", although such action is "ultimately punitive in nature"); *In re Ngan Gung Restaurant, Inc.,* 195 B.R. 593, 598–99 (S.D.N.Y.1996) (bankruptcy court has authority to fashion sanctions for abuse of bankruptcy process).

In the absence of abusive or fraudulent conduct, the trustee's duty is simply "to recover money to distribute to creditors. He is not concerned with abstract concepts of justice when there is no possibility of recovery for the estate." *In re Acadiana Elec. Serv., Inc.,* 66 B.R. 164, 168 (Bankr.W.D.La.1986). Consequently, "[t]he commencement of litigation by a trustee or debtor-in-possession on behalf of an estate in bankruptcy under the avoidance provisions is permissive and not mandatory." *In re V. Savino Oil & Heating Co.,* 91 B.R. 655, 656 (Bankr.E.D.N.Y. 1988). As aptly explained in *In re Haugen Constr. Serv., Inc.,* 104 B.R. at 240:

A trustee is under no mandatory duty to pursue and recover every transfer that might be avoidable under one of the Bankruptcy Code's avoidance sections. The relevant empowering sections 544, 545, 547, 548, 549 and 550 give the trustee discretion to utilize the remedies set forth but do not force him to do so. Each section says that a trustee "may" pursue the remedy, not that he must. In making a decision whether to pursue ... any of the [ ] recovery remedies, a trustee should do so only to the extent such action is "compatible with the best interest of parties in interest." *See* Section 704(1). Such a decision involves weighing a myriad of factors and often requires making the decision at a time when not all of the factual inputs are available and when the estate does not have money available to conduct an expansive investigation of the facts. These factors include: the factual and legal merits of the prospective action; the probable value of the recovery to the estate; the probable cost of the action to the estate. In making a decision, a trustee, cognizant of his fiduciary role, must avoid spurious lawsuits as well as those which, while having theoretical legal merit, would be unduly expensive to the estate, involve undue risk to the estate or likely result in minimal recovery for the estate.

(citing *In re Acadiana Elec. Serv., Inc.*, 66 B.R. at 165) (rejecting motion to remove trustee who decided not to pursue certain preferences).

▬▬▬▬ Although "a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to sue or not to sue," *In re V. Savino Oil & Heating Co.*, 91 B.R. at 656; *see In re Photo Promotion Assocs., Inc.*, 881 F.2d 6, 8 (2d Cir.1989) (recognizing "the broad discretion a bankruptcy judge has in applying [ ] § 549(a)"), it would be an abuse of discretion to bring an action to set aside a post-petition transfer if it would not financially benefit the estate. In order to make this assessment, a trustee must conduct a cost-benefit analysis. As explained in *In re C. Keffas & Son Florist, Inc.*, 240 B.R. 466, 474 (Bankr.E.D.N.Y.1999):

> [i]f the trustee fails to make this necessary cost-benefit analysis, then the trustee will necessarily breach the statutory mandate under 11 U.S.C. § 704(1) .... This is not an instance of second-guessing the trustee in a retrospective analysis at the end of the case. It is very definitely an ex ante, and not an ex post, approach that is mandated by the trustee's statutory duty of maximizing proceeds of distribution to the creditors, net administrative expenses, and distributing those proceeds as expeditiously as possible. *The proper application of this ex ante analysis does-it is undeniable-require the exercise of practical judgment.*
> *If a trustee incurs transaction costs for the estate when no purpose would be served by [such conduct], then that constitutes a per se breach of that duty.*

(emphasis added). In *C. Keffas,* the bankruptcy court held that the trustee breached his fiduciary duty when the costs of pursuing the claim "exceeded by a very substantial measure any conceivable benefit to the estate" and manifested "complete inattention to any standard of practical judgment." *Id.* at 473. In that regard,

> [i]t must be remembered that the trustee is not like a private client. If an attorney's private client wishes to pursue litigation which may not be cost-effective (but which is ethically and legally permissible) he is only wasting his own money. The trustee is a fiduciary. If he pursues such litigation, he is spending the estate's money, money which should inure to the benefit of the creditors.

*In re Scoggins,* 142 B.R. 940, 946-47 (Bankr.D.Or.1992); *see In re STN Enters.,* 779 F.2d 901, 905 (2d Cir.1985) (in deciding whether to grant creditor committee leave to pursue litigation, court must perform cost-benefit analysis as to whether litiga-

tion will benefit the reorganization of the estate); *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir.1992) (trustee properly settled proceeding when prolonging litigation would inevitably "entail relinquishment of the settlement in hand in favor of the more amorphous and elusive litigation prospects in the bush"); *In re Carla Leather*, 44 B.R. at 472 ("In pursuing litigation in the name of the debtor, the trustee's obligation is not that he should burden the assets of the estate with costs and expenses arising out of all manner of questions that may be presented for litigation.").

Therefore, " 'when a cost-benefit analysis indicates that the only parties who will likely benefit from an investigation of a claim are the trustee and his professionals, investigation is unwarranted.' " *In re Riverside–Linden Inv. Co.*, 925 F.2d 320, 322 (9th Cir.1991) (quoting and affirming *In re Riverside–Linden Inv. Co.*, 99 B.R. 439 (9th Cir. BAP 1989)) (internal quotation omitted). In the same vein, the trustee must "consider whether or not the probable cost of legal services or litigation would be disproportionately large in relation to the maximum probable (not possible) recovery." *In re Scoggins*, 142 B.R. at 945 (trustee should not have litigated allegedly fraudulent transfer of used car worth $1,300); *see In re Arnold*, 176 B.R. 13, 15–16 (Bankr.E.D.Tex.1995) ("If the fees incurred will exceed the recovery, there is no benefit to the estate and the action should not be pursued."). Consequently, bringing a lawsuit "which would cost the [ ]estate fees and costs, when no recovery could result, would be a breach of the trustee's duties." *In re Acadiana Elec. Serv., Inc.*, 66 B.R. at 168.

In making the cost-benefit analysis, the trustee must be mindful of § 550(d) of the Code, which provides that "the trustee is entitled to only a single satisfaction." This "prevents the trustee from obtaining the same recovery twice, for example once from [the transferee] and a second time from [the debtor]." *In re*

*Skywalkers, Inc.*, 49 F.3d 546, 549 (9th Cir.1995); *see In re Bassett*, 221 B.R. 49, 55 (Bankr.D.Conn.1998) (recovery from the defendant was "inappropriate" where a second defendant had "fully satisfied the Debtor's bankruptcy estate to the extent of its legitimate avoidance" prior to the commencement of the avoidance action); *In re Armstrong*, 217 B.R. 569, 579 (Bankr.E.D.Ark.1998) ("total collection [could] not exceed the maximum amount of the[ ] avoidable transfers"); *In re Bennett*, 133 B.R. 374, 381–82 (Bankr.N.D.Tex.1991) (recovery from the debtor precluded judgment against the transferee); *In re Jameson's Foods, Inc.*, 35 B.R. 433, 440 (Bankr. D.S.C.1983) (while two defendants were jointly and severally liable for portion of recovery, trustee could only recover single satisfaction of total amount of debtor's bank deposits).

In keeping with the single satisfaction rule, when an estate contains encumbered property, the trustee is entitled to recover only the unencumbered portion of the property, or its value. *See In re Beshears*, 196 B.R. 464, 468 (Bankr. E.D.Ark.1996) (recovery is the value of the land less the value of the mortgages, because that is what "would have been realized by the estate"); *In re Baker*, 17 B.R. 392, 394 (Bankr.W.D.N.Y.1982) (recovery is the value of the property less the value of the valid liens); *In re Laughlin*, 18 B.R. 778, 781 (Bankr.W.D.Mo.1982) (recovery is the value of the equity in the property).

### Application of General Principles To Present Case

The present case represents a textbook example of purposeless litigation by a trustee. The issue in this action is not whether the debtor should be punished for engaging in a post-petition transfer of his property. That may be the subject of another day if his conduct be deemed to rise to the level of criminal, fraudulent or abusive behavior.[8] What is at stake is the

---

8. It is unlikely that such a finding would ever

be made since it would appear that the debtor

trustee's misguided notion that an avoidance action should be pursued whenever there is a post-petition transfer even though it has not resulted in any damage to the bankruptcy estate. The standard is not, as the trustee maintains, "to enforce the code as a policeman," and to inflict wanton punishment; rather, it is to use good common judgment in the exercise of an appropriate discretion.

■ Here, the only purpose served by the avoidance action would be to punish the purchasers. Notably, the trustee does not refute the purchasers' contention that they did not have actual knowledge of the bankruptcy and that they are simply victims of the law of constructive knowledge. In any event, regardless of the level of their knowledge, there is nothing in this case that suggests that punitive action would ever be warranted against the purchasers.

Accordingly, it was a gross abuse of the trustee's discretion to pursue an avoidance action which could not possibly financially benefit the estate. The trustee certainly should have known that under the single satisfaction rule any monetary recovery would be limited to the pre-petition equity in the property. Since the trustee has acknowledged that the property was sold for its fair market value, and does not dispute that the net proceeds that were turned over to him represented the property's equity, it is painfully apparent to the Court that the only persons who would likely benefit by the avoidance action would be the trustee and his counsel should they seek fees for the litigation. The award of such fees would obviously diminish the value of the estate, a result which it is assumed the bankruptcy court will not countenance. *See In re Scoggins*, 142 B.R. at 945 (denying trustee's fee request because "[w]hile this court would

was simply desirous of closing on a contractual commitment he made prior to filing for bankruptcy protection, rather than harming his creditors.

agree that it is improper to judge the results [of the trustee's actions] with perfect $^{20}\!/_{20}$ hindsight, it appears obvious that reasonable counsel should have know[n] that pursuing this litigation would not result in a substantial benefit to the estate in light of the probable cost of litigation and the need to defend against foreseeable counterclaims"); *In re Dorn*, 167 B.R. 860, 869 (Bankr.S.D.Ohio 1994)(reducing trustee's compensation when the administration of the estate "has had limited benefit to creditors").

## CONCLUSION

The judgment is reversed, summary judgment is granted to the appellants, and the complaint is dismissed against all defendants.[9]

**SO ORDERED.**

9. Although Bean has not appealed, the Court *sua sponte* dismisses the complaint against him. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 112 (2d Cir.1995) (affirming district court's *sua sponte* dismissal of complaint against all defendants).