PER CURIAM.
This is an appeal from a judgment of the District Court for the Western District of Kentucky affirming the bankruptcy court’s award of summary judgment in favor of plaintiff-appellee, Jerry Burns, Trustee, in a Chapter 7 proceeding. The Trustee had moved to avoid certain transactions as unauthorized post-petition transfers of property of the bankruptcy estate of debtor Frankie Dewayne Shelton. The summary judgment had the effect of avoiding the mortgage lien of defendant-appellant Peoples Bank and Trust Company. On appeal, Peoples Bank asserts two claims of error. For the reasons that follow, we vacate the judgment of the district court and remand with instructions.
I
Debtor Frankie Shelton filed a Chapter 11 bankruptcy petition on October 7, 1999. *803 The case was converted to a Chapter 7 bankruptcy by order of the bankruptcy court on January 20, 2000, and Jerry Burns was appointed Trustee. The bankruptcy estate included debtor’s interest in five parcels of land in Barren County, Kentucky, totaling 613 acres. Each parcel was either owned in its entirety by Frankie Shelton or owned by him jointly with his father Virgil Frank Shelton. Firstar Bank N.A. held mortgage liens on four of these parcels and on certain other items of personal property, such as excavation and construction equipment, accounts receivable and dairy cattle. At the time of the bankruptcy petition, the bankruptcy court found, Firstar was owed a total of $1,344,233.49, including the principal amount of $952,844.00.
On or about January 24, 2000, Firstar was granted relief from the automatic bankruptcy stay. The bankruptcy court authorized Firstar to enforce its mortgage liens, on which it had obtained a judgment in state court. Firstar thereupon gave notice of a public auction for the sale of real and personal property on April 8, 2000. Before the auction took place, however, Firstar reached an agreement with debtor Frankie Shelton and his father Virgil Shelton for a different disposition. Pursuant to this “Forbearance Agreement,” (1) Frankie conveyed his interest in the real property to his father Virgil by quitclaim deed; (2) Virgil mortgaged the property to Peoples Bank and Trust for a loan of $668,218; (3) Peoples Bank paid $650,000 to Firstar; and (4) Firstar released its liens. These transactions were completed by the end of March 2000.
It is undisputed that Virgil and Peoples Bank were aware of the pending bankruptcy proceedings. It is also undisputed that, although Firstar had obtained relief from the bankruptcy stay, neither the bankruptcy court nor the Trustee had specifically authorized or approved the above transactions. Hence, the Trustee moved pursuant to 11 U.S.C. § 549(a) to avoid Frankie’s conveyance to Virgil and Peoples Bank’s mortgage lien as unauthorized post-petition transfers. The bankruptcy court rejected the defense that the transactions were authorized, holding as a matter of law that the order authorizing Firstar to enforce its liens did not authorize Frankie to convey property to Virgil.[1] The bankruptcy court went on to rule that Virgil had failed to carry his burden of demonstrating the validity of the post-petition quitclaim conveyance and held the transfer void. The bankruptcy estate was held to be entitled to recover the subject real estate from Virgil pursuant to 11 U.S.C. § 550(a).
As a consequence, the bankruptcy court also avoided Peoples Bank’s mortgage lien pursuant to 11 U.S.C. § 549(a). The bankruptcy court ruled that the defenses of 11 U.S.C. § 550(b) and (e), in favor of a good faith transferee, were not available to Peoples Bank. The bankruptcy court also refused to apply the equitable “earmarking doctrine” to preserve these transactions. The bankruptcy court thus awarded summary judgment to the Trustee. In re Shelton, 273 B.R. 116 (Bankr.W.D.Ky. 2002). On appeal, the district court affirmed in all respects.
II
Peoples Bank maintains on appeal that it is entitled to the defenses of 11 U.S.C. § 550(b) and (e). Under § 550(b), the *804 Trustee may not, in connection with a transfer avoided under § 549, recover property from any immediate or mediate transferee of the initial transferee who takes for value, in good faith, and without knowledge of the voidability of the transfer avoided. Under § 550(e), in relevant part, a good faith transferee from whom the Trustee may recover property has a lien on the property recovered to secure the cost, to such transferee, of any “improvement” made after the transfer.
The bankruptcy court held that both defenses were unavailable to Peoples Bank for two reasons. First, because the Trustee had not sought recovery of any property from Peoples Bank under 11 U.S.C. § 550, the bankruptcy court held the § 550 defenses simply did not come into play. Second, even if the defenses were available, Peoples Bank was deemed not entitled to claim them because it was not a “good faith transferee.”
The bankruptcy court’s interpretation of the applicability of § 550, being an issue of law under the circumstances of this case, is subject to de novo review. See In re Dow Coming, 280 F.3d 648, 656 (6th Cir.2002). Considering the matter de novo, we find no error in the bankruptcy court’s conclusions. The bankruptcy court correctly observed that avoidance of a transfer under § 549(a) and recovery of property under § 550(a) are two different and independent remedies. See In re Burns, 322 F.3d 421, 427-29 (6th Cir.2003); In re Cowan, 273 B.R. 98, 107-08 (6th Cir.BAP2002). Because the Trustee did not seek recovery of property from Peoples Bank under § 550(a), the § 550 defenses are not available. Burns, 322 F.3d at 429; Cowan, 273 B.R. at 108.
Peoples Bank has cited no contrary authority, preferring to argue that it is a “good faith transferee.” Yet, because Peoples Bank is not entitled to assert the § 550 defenses, we need not consider its “good faith transferee” status.
Ill
Peoples Bank also contends the lower courts erred by refusing to apply the earmarking doctrine. Inasmuch as the lower courts’ holdings in this regard were not fact-based determinations, but rather applications of law, this claim, too, presents an issue of law which we review de novo.
The earmarking doctrine is an equitable doctrine by which the use of borrowed funds to discharge a debt is deemed not to be a transfer of property of the debtor, and therefore not voidable. In re Montgomery, 983 F.2d 1389, 1395 (6th Cir.l993)(citing In re Bohlen Enterprises, Ltd., 859 F.2d 561, 564-66 (8th Cir.1988)). In Bohlen, the Eighth Circuit identified three requirements that a transaction should meet in order to qualify for the earmarking doctrine:
(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms, and (3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.
859 F.2d at 566 (footnote omitted); see also In re Superior Stamp & Coin Co., Inc., 223 F.3d 1004, 1008-09 (9th Cir.2000).
In the present record, there appears to be no dispute that the first two of these requirements are satisfied by the instant transactions, whereby Peoples Bank loaned new funds for the explicit and exclusive purpose of discharging Frankie’s debt to Firstar. It is further undisputed that neither the bankruptcy court nor the district court made any finding as to the *805 third requirement, whether the transactions viewed as a whole resulted in any diminution of the estate. In fact — although Peoples Bank vigorously argues that the transactions not only did not diminish, but actually improved the estate— the parties agree that the record is devoid of evidence needed to make this determination.
The bankruptcy court found it unnecessary to reach the third requirement because it held the earmarking doctrine otherwise inapplicable for three reasons. First, it correctly recognized that the earmarking doctrine is traditionally applied as a defense to a preference claim and has not been applied in the Sixth Circuit to a post-petition transfer. Second, the bankruptcy court correctly noted that the instant transactions, including conveyance of property from the debtor to his father as a precondition to the substitution of creditors, are different from the classic earmarking arrangement. Third, recognizing that the earmarking doctrine is equitable in nature, the bankruptcy court held that Peoples Bank had failed to carry its burden of showing entitlement to such relief. That is, the bankruptcy court, despite finding no evidence of wrongful purpose, was not persuaded that Peoples Bank proceeded with a “white heart.” The bankruptcy court recognized that avoidance of Peoples Bank’s mortgage lien produced an “extreme result,” but faulted Peoples Bank for entering into the transactions with less than reasonable due diligence.
We agree with the conclusion that Peoples Bank is not blameless and has contributed to this “extreme result.” Peoples Bank offers no satisfactory explanation for its failure to seek Trustee or bankruptcy court approval of the proposed transaction before consummating it. Yet, we remain unpersuaded that the extreme result of voiding Peoples Bank’s mortgage lien is unavoidable.
Although the earmarking doctrine has not been applied to post-petition transfers in the Sixth Circuit, other courts have so expanded its application. See In re Westchester Tank Fabricators, 207 B.R. 391, 398 (Bankr.E.D.N.Y.1997); In re Network 90 Degrees, 98 B.R. 821, 837 (Bankr. N.D.Ill.1989). Whether expanded application of the doctrine is warranted under the facts of this case remains to be determined, but we are unwilling, at this stage, to answer the question unequivocally in the negative.
We also recognize that the subject transactions are somewhat unique, involving more than a mere substitution of creditors pursuant to an agreement that permitted the debtor no control over the disposition of the new funds. Yet, where the bankruptcy court had authorized Firs-tar to sell the debtor’s property at a public sale, and Firstar instead agreed to an intra-family transfer of the property as a means of obtaining satisfactory enforcement of its mortgage hens through the interposition of a new creditor, we fail to apprehend the significance of this difference in determining the applicability of the earmarking doctrine. Again, we conclude this difference, too, does not necessarily preclude equitable relief under the earmarking doctrine.
Also questionable is the bankruptcy court’s holding that Peoples Bank failed, for lack of a “white heart,” to carry its burden of proving entitlement to equitable relief. Ordinarily, where the earmarking doctrine is invoked as a defense to avoidance of a transfer, it is the trustee who bears the burden of proving the non-applicability of the doctrine. See In re Heitkamp, 137 F.3d 1087, 1089 (8th Cir.1998); In re Brown, 209 B.R. 874, 879 (Bankr. W.D.Tenn.1997).
*806 We have already noted that both parties utterly failed to present proofs on what is essentially the dispositive third requirement of the earmarking doctrine, i.e., whether the transactions diminished the bankruptcy estate. This void is glaring and critical, considering that application of the earmarking doctrine is inherently fact-based, see Brown, 209 B.R. at 879, and considering that the net impact of the transactions on the estate is such an important element of the analysis. See In re Libby Int’l, Inc., 247 B.R. 463, 467 (8th Cir.BAP2000)(“earmarking situations are analyzed in terms of the net result of the transaction, i.e., whether there is a diminution of the debtor’s estate”). Inasmuch as this arrangement was somewhat unique and not readily recognizable as an example of “earmarking,” the Trastee might be excused for failing to more diligently address his burden. However, the diminution of property analysis which the Trustee ought to have undertaken in asserting the non-applicability of the earmarking doctrine is not unlike the cost-benefit analysis that ought to have preceded his suit to avoid the transfers in the first place.
Insofar as the subject transactions included an unauthorized post-petition transfer of property from Frankie to Virgil, the bankruptcy court correctly concluded that the transfer was voidable — not “void,’’but “voidable.” See 11 U.S.C. § 549(a) (“the trustee may avoid”); In re Bean, 251 B.R. 196, 203 (E.D.N.Y.2000)(holding trustee’s duty under avoidance provisions permissive, not mandatory), affd, 252 F.3d 113 (2nd Cir.2001); In re Consol. Partners Inv. Co., 156 B.R. 982, 984-85 (Bankr. N.D.Ohio 1993)(holding unauthorized post-petition transfers voidable at trustee’s discretion). In other words, the Trustee had discretion to seek to avoid the transfers. In exercising his discretion for the benefit of the bankruptcy estate and its creditors, the Trustee was obliged to undertake a cost-benefit analysis before moving to avoid the post-petition transfers. Bean, 251 B.R. at 204. This, he candidly admits, Trustee Jerry Burns did not do.
Asked how these transactions resulted in a diminution of or injury to the estate, the Trustee contends simply that the lack of prior notice deprived him of the opportunity to evaluate their impact on the estate. The Trustee does not even allege that the transactions diminished the property of the estate. He simply does not know. Ultimately, the Trustee’s avoidance of the transfers appears to have been motivated not by a desire to serve the best interests of the estate, but a desire to vindicate his own authority. Yet, “the Trustee’s duty to act in the best interest of the bankruptcy estate does not include an obligation to punish debtors, let alone others, for punishment’s sake.” Id. at 203. Where, as here, there is no evidence of abusive or fraudulent conduct, the Trustee is not to be concerned with abstract concepts of justice, but should act to protect the bankruptcy estate and its creditors. Id. Based on the present record, it is far from clear that the Trustee so acted in this case. The Trustee may ultimately be vindicated, but justice requires that he be put to the test.
This Court is asked to pass on the availability of equitable relief pursuant to the earmarking doctrine — to expand the doctrine so as to prevent an unfair result. Because of the incompleteness of the requisite factual record, as outlined above, we are unable to do so. Accordingly, the matter will be remanded for further fact-finding consistent generally with the above analysis and directed particularly to the question whether the subject transactions resulted in a diminution of the bankruptcy estate. The answer to this question, though not necessarily dispositive, must *807 play a prominent role in the ultimate determination whether equitable relief is available under the earmarking doctrine.
IV
For the foregoing reasons, the judgment of the district court is VACATED. The lower courts’ refusal to apply the earmarking doctrine was based on an incomplete factual record and a misapprehension concerning the burden of proof. The action is therefore REMANDED to the district court with instructions (1) to afford the parties a reasonable opportunity to present evidence on the question whether the subject transactions resulted in a diminution of the bankruptcy estate; (2) to make findings of fact on this issue; and (3) to reconsider the applicability of the earmarking doctrine in light of such findings.
KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.
MOORE, Circuit Judge.
While I concur in that part of the majority opinion that concludes that Peoples Bank is not entitled to the defenses of 11 U.S.C. § 550(b) and (e), based on our decision in Suhar v. Burns (In re Bums), 322 F.3d 421 (6th Cir.2003), I dissent from Part III of the opinion, suggesting that the earmarking doctrine might be applicable in this case. Whether or not the earmarking doctrine should be extended to protect unauthorized post-petition transfers, an issue which this court has not decided, it should not be so extended here. In this case, Frankie Shelton, the debtor, illegitimately transferred his property to his father, Virgil Shelton, who then assumed a mortgage on the property in his own name. Normally in earmarking, one creditor steps into the shoes of another, and the claim against the debtor’s estate remains constant. In this ease, Peoples Bank did not merely step into the shoes of Firstar, the original mortgagee. Instead, we have a transfer of a debtor’s (Frankie’s) legal interest in property to a third party (Virgil), and that third party’s assumption of debt to a second creditor (Peoples Bank) secured by that property, and subsequent repayment of the original creditor (Firstar). Now the creditor (Peoples Bank) of the third party - never a creditor of the debtor - protests that it should have a claim against the debtor’s bankruptcy estate. I cannot see any set of facts under which this would be a reasonable proposition. If Peoples Bank wished to avoid this “extreme result,” they should not have undertaken this chancy transaction. It is especially difficult to see how a legally invalid transfer of property - as the transfer of the property at issue from Shelton fils to Shelton pere was adjudged to be - can support a mortgage. If Virgil Shelton never owned the property, it seems impossible that a mortgage which he gave to Peoples Bank on that property could be valid. I believe the bankruptcy court and the district court properly determined that this set of facts is beyond the reach of the earmarking doctrine, assuming that the earmarking doctrine is theoretically applicable, and I would affirm their decisions on that basis as well. Therefore, I would affirm the judgment of the district court.

. The order granting relief from the bankruptcy stay has not been made a part of the record. The precise scope of relief granted is therefore indeterminate on the present record. Yet, Peoples Bank has not directly challenged the bankruptcy court’s ruling in this regard on appeal, and the scope of relief granted is given no further scrutiny.