*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 07b0002n.06**

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re | ) | |
| OHIO BUSINESS MACHINES, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BRIAN A. BASH, TRUSTEE, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | |
| v. | ) | No. 06-8005 |
| | ) | |
| SUN TRUST BANKS, INC., | ) | |
| | ) | |
| Defendant - Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, at Cleveland
No. 04-1356

Argued: November 8, 2006

Decided and Filed: January 25, 2007

Before: AUG, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Christopher J. Niekamp, BERNLOHR WERTZ, LLP, Akron, Ohio, for Appellant. Rebecca Kucera Fischer, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellee. **ON BRIEF:** Christopher J. Niekamp, BERNLOHR WERTZ, LLP, Akron, Ohio, for Appellant. Rebecca Kucera Fischer, Patrick T. Lewis, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

MARCIA PHILLIPS PARSONS, Bankruptcy Appellate Panel Judge. The bankruptcy court dismissed this adversary proceeding for lack of subject matter jurisdiction, concluding that the chapter 7 trustee did not have standing to pursue the state law fraudulent conveyance and breach of fiduciary duty actions against SunTrust Banks, Inc. ("SunTrust") because the funds transferred did not belong to the debtor Ohio Business Machines, Inc. ("OBM"). In conjunction with the dismissal, the bankruptcy court denied the chapter 7 trustee's request to substitute the bankruptcy estate of Point Group, Inc. ("PGI") as a party plaintiff under Federal Rule of Civil Procedure 17. In this appeal by the chapter 7 trustee, we conclude that the debtor OBM did have an interest in the funds transferred and therefore the dismissal for lack of subject matter jurisdiction was erroneous. Although this conclusion renders the chapter 7 trustee's substitution motion moot, we find no abuse of discretion in the bankruptcy court's denial of the motion.

## I. ISSUES ON APPEAL

The issues on appeal are: (1) whether the bankruptcy court correctly determined that the debtor did not have an interest in the funds transferred and as a result the trustee of its estate lacked standing to prosecute the state law fraudulent conveyance and breach of fiduciary duties claims; and (2) whether the bankruptcy court abused its discretion in denying leave for the chapter 7 trustee to add a party plaintiff.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order, for the purpose of an appeal, is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798,

2

109 S. Ct. 1494, 1497 (1989). The bankruptcy court's order granting SunTrust's motion for dismissal was a final order. *See*, *e.g.*, *Southerland v. Smith*, 136 B.R. 565 (M.D. Fla. 1992) (bankruptcy court's dismissal of adversary proceeding qualified as a final order appealable to the district court).

An appellate court reviews a decision to dismiss for lack of subject matter jurisdiction *de novo*. *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996). Factual determinations regarding jurisdictional issues are reviewed for clear error. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1999).

"We review a[n] . . . order denying a Rule 15(a) motion to amend for an abuse of discretion." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)). An order denying a Rule 17 motion to substitute a real party in interest also is reviewed for abuse of discretion. *See*, *e.g., Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 530 (6th Cir. 2002). "An abuse of discretion occurs only when the [trial] court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *In re Downs*, 103 F.3d 472, 480-81 (6th Cir. 1996) (quoting *United States v. Hart*, 70 F.3d 854, 859 (6th Cir.1995), and *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988)). "An abuse of discretion is defined as a 'definite and firm conviction that the [bankruptcy court] committed a clear error of judgment.'" *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607-08 (6th Cir. 2000) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 770 (6th Cir. 1999)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* at 608 (citations omitted).

## III. FACTS

Incorporated under Ohio law on November 17, 1993, OBM leased and serviced copier machines throughout northeast Ohio and western Pennsylvania. From 1993 to 2000, OBM generally served as an exclusive distributor and sales agent for products made by Sharp Electronics. PGI is the sole shareholder and/or parent holding company of OBM.

On December 13, 1996, OBM, PGI and SunTrust entered into a Subordinated Note and Warrant Purchase Agreement, which resulted in SunTrust loaning OBM and PGI the sum of $1.5 million. In return, OBM and PGI executed a promissory note in favor of SunTrust in the same amount, and PGI entered into a warrant agreement ("Agreement") with SunTrust, which gave SunTrust the right to purchase up to 291 shares of PGI stock. The Agreement contained a "put" option that permitted SunTrust to resell the shares back to PGI at the "put" price.

Subsequently, Minolta Corporation ("Minolta") approached OBM about the possibility of OBM selling Minolta products instead of Sharp products. Upon reaching an agreement, Minolta signed a letter of intent on May 3, 2000, agreeing to loan OBM and PGI up to $3.25 million in order "to enable [OBM and PGI] to retire certain outstanding warrants and indebtedness and to provide working capital." (J.A. at 207.) Thereafter, on June 28, 2000, the parties executed a series of documents in connection with the transaction. Included in those documents were a dealer agreement and a separate loan agreement, wherein Minolta as "Lender" agreed to loan OBM and PGI as "Borrower" the $3.25 million sum. The loan agreement provided that the loan proceeds were to be used to repay all of Borrower's obligations to SunTrust and another entity, to retire all issued and outstanding warrants of Borrower held by SunTrust and other specified entities, and for the working capital of Borrower. The loan agreement also provided that a condition precedent to the loan was that Borrower reach an agreement with SunTrust for the surrender of the outstanding warrants held by SunTrust. Concurrently with the execution of these loan documents, PGI and SunTrust entered into a Warrant Redemption and Note Repayment Agreement ("Warrant Redemption Agreement"), wherein SunTrust agreed to sell its interests in the warrants to PGI for a specified price and in conjunction therewith, PGI would pay off the indebtedness owed to SunTrust by OBM and PGI.

4

Also on June 28, 2000, pursuant to the terms of an escrow and wire instructions agreement entered into among Minolta, OBM and PGI, Minolta wired the loan proceeds to an escrow agent, who then disbursed to SunTrust the sum of $926,021.29 for the redemption of the PGI stock warrants and $978,987.50 to pay off the subordinated note owed to SunTrust by OBM and PGI.

Almost two years after the payments to SunTrust, OBM and PGI each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 17, 2002, and the bankruptcy court entered an order for the joint administration of the two cases. The cases subsequently converted to chapter 7 on May 12, 2004. Brian A. Bash ("Trustee") was appointed chapter 7 trustee in each case.

On June 25, 2004, the Trustee initiated the instant adversary proceeding against SunTrust in the bankruptcy case of OBM, thereafter filing an amended complaint on August 13, 2004, and on October 27, 2004, a second amended complaint, setting forth two primary causes of action.[1] The Trustee's first basis for relief was grounded on the assertion that the payment to SunTrust for the surrender of the warrants was avoidable pursuant to the trustee's strong-arm powers of 11 U.S.C. § 544(b) and under the Ohio fraudulent conveyance laws because it had been made while OBM was insolvent and without OBM receiving reasonably equivalent value in exchange for the payment. The second count of the complaint was that SunTrust's receipt of payment for the indebtedness owed SunTrust by OBM and PGI was a breach of its fiduciary duty to OBM because SunTrust was an insider of OBM and had knowledge of OBM's bleak financial condition at the time of the transfer.

After SunTrust filed an answer admitting receipt of the funds but otherwise denying the allegations, the Trustee moved for summary judgment, asserting the lack of a genuine issue of material fact and that he was entitled to judgment as a matter of law. SunTrust responded with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for

---

[1] A third claim for relief stated to the extent SunTrust had been the recipient of any avoidable, unreturned transfers, any claim filed by it in the bankruptcy case should be disallowed under 11 U.S.C. § 502. No issues have been raised in this appeal regarding this basis for relief.

summary judgment in its favor. The dismissal motion asserted that the Trustee lacked standing to bring the adversary proceeding because he was seeking recovery on behalf of the OBM bankruptcy estate rather than the PGI estate. The motion alleged that PGI, not OBM, had made payments to SunTrust, since the Warrant Redemption Agreement specified that PGI would make the payments to SunTrust. Alternatively, SunTrust argued that it was entitled to prevail as a matter of law on the fraudulent transfer and breach of fiduciary duty claims because there had been no conveyance of property of the debtor, i.e., OBM, and SunTrust's receipt of funds from PGI would not be a breach of any fiduciary duties SunTrust might owe to OBM. Also in this regard, SunTrust asserted that it had no fiduciary duties to OBM and OBM's creditors because it was not an agent, officer, or director of OBM. In response, the Trustee moved on August 3, 2005, to add the bankruptcy estate of PGI as a party plaintiff under Federal Rule of Civil Procedure 17.[2]

Thereafter, the bankruptcy court heard oral arguments on all of the motions and set a trial for November 30, 2005. On the eve of trial, however, the bankruptcy court notified the parties that it had dismissed the Trustee's claims and cancelled the trial. Subsequently, on January 9, 2006, the bankruptcy court issued a Memorandum of Opinion and Order, wherein it granted SunTrust's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. The bankruptcy court held that it was "clear that the party to whom the instant cause of action belongs is the estate of PGI, not that of OBM" (J.A. at 24.), noting that OBM was not a party to the Warrant Redemption Agreement between PGI and SunTrust. The court observed that the Trustee as trustee of the estate of OBM could not bring an action on behalf of the bankruptcy estate of PGI because the two bankruptcy cases had not been substantively consolidated.

---

[2] The Trustee's motion was based not only on Federal Rule of Civil Procedure 17, but also on Federal Rule of Civil Procedure 15(c) which governs the circumstances under which an amended pleading will relate back to the date of the original pleading. The bankruptcy court held that the Trustee could not use this rule to amend his complaint in order to add the PGI estate as a co-plaintiff inasmuch as the statute of limitations had expired, citing *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973), which held that such an amendment would create a new cause of action with no relation back to the original filing for purposes of limitations. In this appeal, the Trustee does not challenge the bankruptcy court's rejection of Rule 15, only denial under Rule 17.

The bankruptcy court further held that the Trustee could not add the PGI estate as a party plaintiff under Federal Rule of Civil Procedure 17(a). The bankruptcy court observed that the Trustee previously had filed two amended complaints without adding the PGI estate as a co-plaintiff, even though all of the relevant information regarding the transactions at issue was in the Trustee's possession. The court also noted that the Trustee had failed to offer any explanation for why he did not timely include the estate of PGI as a plaintiff.

The Trustee timely filed his notice of appeal on January 17, 2006.

## IV. DISCUSSION

Although both the Trustee and SunTrust spend a great deal of their appellate briefs addressing the issue of constitutional and prudential limitations on standing, there appears to be no dispute as to the law in this area. Standing with respect to the fraudulent conveyance avoidance action is conveyed generally by 11 U.S.C. § 544(b)(1) which provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable under section 502(e) of this title.[3]

Under this provision, a trustee has the right to avoid any transfer of property of a debtor or any obligation incurred by a debtor that is voidable under applicable law by an unsecured creditor of the debtor.[4] 5 *Collier on Bankruptcy* ¶ 544.09 (15th ed. rev. 2003). Applicable law in this case is the Ohio Uniform Transfer Act, more specifically Ohio Revised Code Annotated § 1336.05, which states:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving

---

[3] Paragraph (2) of § 544(b) makes paragraph (1) inapplicable to certain charitable contributions and is not pertinent to the case at hand.

[4] No assertion has been made as to the lack of an unsecured creditor who would have standing under state law to avoid the transfer to SunTrust to the extent the transfer otherwise met the requirements of avoidability.

7

a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Pursuant to the Act, a "'[t]ransfer' means every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Ohio Rev. Code Ann. § 1336.01(L). An "asset" means "property of a debtor," subject to certain exceptions inapplicable to this proceeding.[5] Ohio Rev. Code Ann. § 1336.01(B).

Indisputably, there was a transfer to SunTrust. The critical inquiry is whether the transfer was of "an interest of the debtor in property" as contemplated by § 544(b) of the Bankruptcy Code and Ohio Revised Code Annotated § 1336.05. *See Rieser v. Hayslip* (*In re Canyon Sys. Corp.*), 343 B.R. 615, 635-36 (Bankr. S.D. Ohio 2006) ("To establish an actual fraudulent transfer under . . . the Ohio UFTA, the Trustee must first demonstrate that the Debtor had an interest in the property transferred to the defendants.").

The Trustee argues in this appeal that the bankruptcy court erred in finding that the funds transferred to SunTrust for the redemption of the PGI stock warrants were not property of OBM. The Trustee observes that the funds transferred were generated from the Minolta loan to both OBM and PGI, which both entities were jointly and severally obligated to repay; that OBM through its

---

[5] The statutory exceptions are as follows:
1. Property to the extent it is encumbered by a valid lien;
2. Property to the extent it generally is exempt under nonbankruptcy law, including but not limited to, section 2329.66 of [the Act];
3. An interest in property held in the form of a tenancy by the entireties created under section 5302.17 of [the Act] prior to April 4, 1985, to the extent it is not subject to process by a creditor holding a claim against only one tenant.

Ohio Rev. Code Ann. § 1336.01(B).

president executed the wire transfer and escrow agreement, pursuant to which Minolta wired the loan proceeds to the escrow agent, who then disbursed the funds to SunTrust; and that but for the transfer to SunTrust, the funds would have been utilized as working capital for OBM since both the Minolta letter of intent and loan agreement specified that any funds remaining after payment to SunTrust and the other specified entities would go to OBM for working capital. According to the Trustee, the bankruptcy court's reliance on the fact that OBM was not a party to the Warrant Redemption Agreement between PGI and SunTrust was misplaced because contractual privity is not a prerequisite to standing for the state fraudulent conveyance action. Moreover, the Trustee asserts that the Warrant Redemption Agreement was only one document in the larger transaction with Minolta, which included the loan agreement, the letter of intent, and the wire transfer instructions, to all of which OBM was a party. Consequently, the Trustee maintains that OBM had a sufficient interest in the funds transferred to withstand any facial or factual attack on the Trustee's standing.

In response, SunTrust defends the bankruptcy court's ruling, noting that the obligation to pay SunTrust for the warrants was the obligation of PGI alone, as set forth in the Warrant Redemption Agreement. As to the assertion that absent the transfer the funds would have been available for working capital for OBM, SunTrust notes that the loan documents used the initials OBM to collectively refer to both OBM and PGI and that, therefore, the funds would have been available for the working capital of both entities. Finally, although not cited by the bankruptcy court as a basis for its holding, SunTrust argues that the Minolta loan proceeds never passed into OBM's possession and control and therefore never became an asset of OBM because the funds were disbursed by Minolta through an escrow agent.

We agree with the Trustee that OBM had an interest in the funds transferred to SunTrust. Notwithstanding that the original warrant agreement was between PGI and SunTrust alone and the subsequent Warrant Redemption Agreement was only between these two entities, it is clear that the funds paid to SunTrust were funds that Minolta had loaned to both OBM and PGI, and that both OBM and PGI were obligated to repay. OBM was a party to the Minolta loan agreement and a party to the escrow agreement, wherein it gave its consent to the distribution of funds in which it had an interest. If OBM had had no interest in the funds, it would not have been necessary for it to be a

9

party to the escrow agreement which directed the distribution to SunTrust. The mere fact that the funds were to be used to pay a debt owed solely by PGI did not obviate the fact that PGI's debt was paid with funds in which OBM had an interest since Minolta had loaned the funds to both OBM and PGI and each was severally obligated for the funds' repayment. Because the transfer to SunTrust was made with funds that had been loaned to OBM, there was a transfer of property of the debtor. The bankruptcy court's decision to the contrary was clearly erroneous.

As to SunTrust's assertion that the funds never became property of OBM because the funds went from Minolta to SunTrust via an escrow agent and never passed into the debtor's possession, SunTrust is referring to what some courts call the "earmarking doctrine," more customarily asserted as a defense in preference actions rather than in a fraudulent conveyance suit. *See Peoples Bank & Trust Co. v. Burns*, 95 Fed. Appx. 801, 805 (6th Cir. 2004) ("[T]he earmarking doctrine is traditionally applied as a defense to a preference claim . . . ."); *In re Erie World Entm't, L.L.C.*, No. 00-13708, 2006 WL 1288578, at *6 (Bankr. S.D.N.Y. April 28, 2006) (question raised and unresolved as to whether earmarking doctrine can be applied in a fraudulent conveyance case). Nonetheless, in an unpublished opinion involving a fraudulent conveyance action under 11 U.S.C. § 544, the Court of Appeals for the Sixth Circuit stated that "[t]he earmark doctrine applies where: (1) the assets in question were never under the control of the debtor; (2) the assets are transferred from a third party to the creditor as a payment for an antecedent debt owed by the debtor; and (3) the debtor's estate is not diminished in value." *Alix v. Beim* (*In re Sanders*), 168 F.3d 490, 1998 WL 808373, at * 2 (6th Cir. Nov. 9, 1998) (citing *United States Lines (S.A.), Inc. v. United States* (*In re McLean Indus., Inc.*), 162 B.R. 410, 420 (S.D.N.Y. 1993), *rev. on other grounds*, 30 F.3d 385 (2d Cir. 1994)).

Even assuming the first element is established by the facts of this case, although this proposition is questionable because OBM as a party to the escrow agreement directed the disposition and use of the funds, the other two elements necessary for the earmarking doctrine are missing. The funds transferred to SunTrust were not used to repay a debt owed by OBM but were instead used to pay an obligation of PGI for which OBM had no liability. Additionally, the transaction diminished OBM's estate. In essence, OBM was a co-borrower of the funds used to pay off a debt owed by PGI,

10

resulting in an increase of OBM's liabilities with no commensurate increase in its assets. As such, the earmarking doctrine provides no defense to the Trustee's fraudulent conveyance action against SunTrust.

In summary, because OBM had an interest in the funds transferred to SunTrust, the Trustee on behalf of the estate of OBM has standing under § 544(b) and consequently under the Ohio state fraudulent conveyance statute to pursue the avoidance of the transfer. Accordingly, the bankruptcy court's ruling on this issue is reversed.

We turn next to the question of whether the Trustee has standing on behalf of the OBM estate to bring a cause of action for breach of fiduciary duties by SunTrust. Although the bankruptcy court did not separately reference standing for this action in its opinion, the court dismissed the entire complaint, presumably because it concluded that OBM had no interest in the property transferred and therefore conveyance of this property could not constitute a breach of any fiduciary duties owed to OBM. For the reasons previously addressed with respect to the fraudulent conveyance count, we conclude that OBM had an interest in the funds transferred.

Furthermore, we conclude that standing to bring the breach of fiduciary duty claim rests as a general proposition with the Trustee. When a cause of action belongs to the debtor before filing a bankruptcy petition, 11 U.S.C. § 704(1) grants the trustee the exclusive right to assert that cause of action. *See Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 853 (6th Cir. 2002). Section 704(a)(1) provides such authority to the trustee by stating, in relevant part, that a trustee shall "collect and reduce to money the property of the estate for which such trustee serves . . . [.]" Pursuant to 11 U.S.C. § 541(a)(1), "all legal and equitable interests of the debtor," including any causes of action belonging to the debtor, comprise part of the "property of the estate." *See*, *e.g.*, *In re Cannon*, 277 F.3d at 853; *Spartan Tube & Steel, Inc. v. Himmelspach* (*In re RCS Engineered Prods. Co.*), 102 F.3d 223, 225 (6th Cir. 1996). Conversely, if a cause of action does not belong to the debtor, then it does not become property of the estate as defined by § 541, and the trustee has no standing to pursue that cause of action. *In re Cannon*, 277 F.3d at 853. "Whether a particular cause of action belongs to the debtor so that it constitutes 'property of the estate' depends on state law." *In re Cannon*, 277 F.3d at 853; *see also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S. Ct. 1386,

1389 (1992) (noting that "in absence of any controlling federal law 'property' and 'interests in property' are creatures of state law").

In his complaint, the Trustee asserted that SunTrust committed a breach of its fiduciary duty owed to OBM's creditors and that OBM's creditors were injured by SunTrust's breach. However, "[a]ctions for breach of fiduciary duties . . . accrue to the corporation itself because fiduciary duties are owed to the corporation and it is the corporation that suffers injury when fiduciary duties are breached." *Limor v. Buerger* (*In re Del-Met Corp.*), 322 B.R. 781, 818 (Bankr. M.D. Tenn. 2005) (citing, *inter alia*, *Pepper v. Litton*, 308 U.S. 295, 307, 60 S. Ct. 238 (1939) ("While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee."); *Keene Corp. v. Coleman* (*In re Keene Corp.*), 164 B.R. 844, 853-54 (Bankr. S.D.N.Y. 1994) ("Claims based upon breach of a fiduciary duty belong to a corporation, but once bankruptcy ensues, they are enforceable by the trustee. The trustee, therefore, is the only person with standing to bring those claims and the creditors are barred from asserting them.")). *See also KMA Acquisitions Corp. v. Coleman*, No. 92AP-1635, 1993 WL 431201 (Ohio App. 10 Dist. October 19, 1993) ("Only the corporation itself may maintain an action against the directors and officers . . . for breach of their fiduciary duties."). Accordingly, the Trustee has standing to bring an action for breach of fiduciary duty on behalf of OBM. The bankruptcy court's order dismissing this claim for lack of standing is reversed.

The Trustee also asserts that it was error for the bankruptcy court to refuse to allow him to join or substitute the estate of PGI as a plaintiff in the underlying adversary proceeding pursuant to Federal Rule of Civil Procedure 17(a). The Trustee argues that SunTrust will not suffer any prejudice if he joins the PGI estate as a plaintiff, and that the bankruptcy court erred in not giving him a reasonable time to make the joinder in light of the fact that SunTrust did not raise the argument that he was not the real party in interest until it filed its Motion for Summary Judgment and Motion to Dismiss in July 2005.

Rule 17(a), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7017, states in relevant part:

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a).

The bankruptcy court herein denied substitution of the PGI estate as a party plaintiff because the Trustee advanced no explanation for his failure to timely include the estate, nor did he argue a lack of access to information relevant in determining the correct plaintiff. *See* 6A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1555 (2d ed. 2006) ("[I]t has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then the last sentence of Rule 17(a) was not applicable and the action should be dismissed."). Further, the bankruptcy court cited the fact that the Trustee had already filed two amended complaints without including the estate of PGI as a plaintiff. *See id.* ("[I]f the real party in interest is not joined or substituted within a reasonable time, the court should dismiss the suit. . . . What constitutes a reasonable time is a matter of judicial discretion and will depend upon the facts of each case."). Although this issue is moot due to our conclusion that the Trustee as trustee of the bankruptcy estate of OBM has standing in this adversary proceeding, we are unable to conclude, based on a review of the entire record in this case, that the bankruptcy court's denial of the Trustee's motion to add the PGI estate as a party plaintiff under Rule 17 was so unreasonable as to constitute an abuse of discretion. In that respect, the bankruptcy court's decision is affirmed.

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is REVERSED in part and AFFIRMED in part.

13