**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0538n.06
Filed: July 31, 2007

Case No. 06-5777

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| IN RE: FRANKIE SHELTON, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| | ) | |
| PEOPLES BANK & TRUST COMPANY, | ) | ON APPEAL FROM THE |
| | ) | WESTERN DISTRICT OF |
| Appellant, | ) | KENTUCKY |
| | ) | |
| v. | ) | |
| | ) | |
| JERRY A. BURNS, Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

BEFORE: BATCHELDER and MOORE, Circuit Judges; MILLS,[*] District Judge.

**ALICE M. BATCHELDER, Circuit Judge.** Peoples Bank & Trust Co. appeals from the order of the district court affirming the decision of the bankruptcy court declining to apply the "earmarking doctrine" to a post-bankruptcy petition transfer. We reverse.

**I.**

In 1997, Frankie Shelton owned — either outright or with his father, Virgil Shelton — four tracts of land, on which were, among other things, a farm and a John Deere dealership. Frankie pledged his interest in this property, both real and personal (e.g., construction equipment and dairy

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

cows), as collateral on $952,844 in loans from Firstar Bank. He filed a Chapter 11 bankruptcy, but the bankruptcy court converted it to a Chapter 7 and appointed a trustee. The court also granted Firstar's motion to terminate the automatic stay on the sale of property. Firstar contracted with Shaker Equipment Company to conduct an auction.

Meanwhile, in an effort to save the farm, Frankie and Virgil had entered into a forbearance agreement with Firstar, promising Firstar $200,000 to forbear its right to auction until March 31, 2000, and another $450,000 on March 31, 2000, to release its liens on the real and personal property. Virgil Shelton borrowed the necessary funds from Peoples Bank, which disbursed the funds to Virgil, who, in turn, paid Firstar, and Firstar released its liens. Frankie executed and recorded a quitclaim deed, conveying his interest in the real property to Virgil, and that same day, Peoples Bank recorded a mortgage on the property as security for a loan to Virgil in the amount of $668,218. Virgil assumed Firstar's responsibility under the auction contract between Firstar and Shaker, and pledged his interest in the personal property to Peoples Bank; Peoples Bank recorded these chattel mortgages. Neither the Sheltons nor Firstar notified the trustee or the court of any of these transactions. Similarly, although Peoples Bank knew of the bankruptcy before conducting the transaction and recording the mortgages, Peoples Bank did not seek approval from either the trustee or the court to proceed with these transactions.

Apparently due to a failure of communication, Shaker, acting independently of Virgil and Firstar, proceeded with the auction, sold Frankie's personal property, and distributed the proceeds to the bankruptcy trustee. Peoples Bank, claiming an enforceable security interest in the property, objected to the bankruptcy court, but to no avail.

The trustee moved the bankruptcy court for summary judgment, seeking to avoid the transfers

to Virgil and the mortgage to Peoples Bank as unauthorized post-petition transfers. The court granted the motion. Peoples Bank moved to file a counterclaim, seeking to pursue the proceeds of the personal property auction, which the court denied. The court voided the transfer to Virgil and authorized the trustee to sell the real estate free of Peoples Bank's mortgage lien. The court refused to extend the "earmarking doctrine," explaining: (1) as a defense to a perfection claim, it has not been extended to post-petition transfers; (2) as a protection for substituted creditors, it has not been applied to transfer of property situations; and (3) as an equitable doctrine, it required Peoples Bank to show "clean hands," which it could not do. Peoples Bank appealed to the district court.

The district court affirmed and Peoples Bank appealed to this court, which vacated and remanded in a split, *per curiam* opinion. The majority explained: "The earmarking doctrine is an equitable doctrine by which the use of borrowed funds to discharge a debt is deemed not to be a transfer of property of the debtor, and therefore not voidable." *Peoples Bank & Trust Co. v. Burns*, 95 F. App'x 801, 804 (6th Cir. 2004) (citation omitted).

> [There are] three requirements that a transaction should meet in order to qualify for the earmarking doctrine: (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms, and (3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*Id*. (quotation marks and citations omitted). The majority found: "In the present record, there appears to be no dispute that the first two of these requirements are satisfied by the instant transactions, whereby Peoples Bank loaned new funds for the explicit and exclusive purpose of discharging Frankie's debt to Firstar. It is further undisputed that neither the bankruptcy court nor the district court made any finding as to the third requirement, whether the transactions viewed as

3

a whole resulted in any diminution of the estate." *Id*. at 804-05. The majority concluded:

> This Court is asked to pass on the availability of equitable relief pursuant to the earmarking doctrine — to expand the doctrine so as to prevent an unfair result. Because of the incompleteness of the requisite factual record, as outlined above, we are unable to do so. Accordingly, the matter will be remanded for further fact-finding consistent generally with the above analysis and directed particularly to the question whether the subject transactions resulted in a diminution of the bankruptcy estate. The answer to this question, *though not necessarily dispositive, must play a prominent role* in the ultimate determination whether equitable relief is available under the earmarking doctrine.

*Id*. at 806-07 (emphasis added).

The dissent asserted that earmarking was unavailable because "Peoples Bank did not merely step into the shoes of Firstar, the original mortgagee" as the (replacement) creditor. *Id*. at 807 (Moore, J., dissenting). "Instead, we have a transfer of a debtor's (Frankie's) legal interest in [the] property to a third party (Virgil)," with concurrent "repayment of the original creditor (Firstar)." *Id*. Peoples Bank, the dissent continued, has nothing to do with the debtor or the original creditor, but merely financed the third party, and Peoples Bank has no claim against the debtor's estate. *Id*.

> It is especially difficult to see how a legally invalid transfer of property — as the transfer of the property at issue from Shelton *fils* to Shelton *père* was adjudged to be — can support a mortgage. If Virgil Shelton never owned the property, it seems impossible that a mortgage which he gave to Peoples Bank on that property could be valid. I believe the bankruptcy court and the district court properly determined that this set of facts is beyond the reach of the earmarking doctrine, assuming that the earmarking doctrine is theoretically applicable[.]

*Id*.

Following remand to the bankruptcy court, the parties stipulated that the transfer of property which is the subject of this litigation *did not* result in a diminution of the bankruptcy estate. Yet the bankruptcy court again declined to apply the earmarking doctrine, and in an otherwise well-reasoned opinion, basically followed the dissent's reasoning as to why the earmarking doctrine did not apply,

4

even concluding with the statement, "Thus, Virgil Shelton held no interest which could be validly or legally mortgaged to the Bank." Peoples Bank again appealed to the district court, and in a two-page decision the district court affirmed, noting that despite the "strong and potentially valid argument that the [Sixth Circuit] panel majority already concluded that the earmarking doctrine would apply under these odd facts if there was no diminution in value of the estate," the panel also "noted that diminution of value was 'not necessarily dispositive.'" Peoples Bank appealed.

## II.

In the first appeal, we set out the rule for applying the earmarking doctrine: (1) an agreement between a new creditor and the debtor for the payment of a specific antecedent debt, (2) performance of the agreement according to its terms, and (3) that the transaction does not result in a diminution of the estate's value. *Peoples Bank*, 95 F. App'x at 804. We found that there was "no dispute that the first two of these requirements are satisfied by the instant transactions," but that "neither the bankruptcy court nor the district court made any finding as to the third requirement, whether the transactions viewed as a whole resulted in any diminution of the estate." *Id*. at 804-05. We ordered that "the matter will be remanded for further fact-finding . . . directed particularly to the question whether the subject transactions resulted in a diminution of the bankruptcy estate." *Id*. at 806. Then, we instructed the bankruptcy court (and the district court): "The answer to this question, though not necessarily dispositive, *must play a prominent role* in the ultimate determination [of] whether equitable relief is available under the earmarking doctrine." *Id*. at 807 (emphasis added).

On remand, the parties stipulated to the answer — the subject transaction *did not* result in a diminution of the bankruptcy estate. But rather than playing a "prominent role," as we had instructed, this fact was virtually ignored. The bankruptcy court simply adopted the same argument

5

and reasoning the Judge Moore had expressed in dissenting from our prior decision. *See Peoples Bank*, 95 F. App'x at 807 (Moore, J., dissenting). But in reaching our prior decision, we had read, considered, and rejected that reasoning, and therefore, it was no longer available to the bankruptcy court. At this point in the proceedings, our prior decision was the law of the case.

The question now before us is no longer the propriety of the earmarking doctrine in this case; the immediate question is whether we can reconsider the law of this case.

> It is clear that when a case has been remanded by an appellate court, the trial court is bound to 'proceed in accordance with the mandate and law of the case as established by the appellate court.' The 'law of the case' doctrine precludes a court from 'reconsideration of identical issues.' 'Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case.' As we have held, however, this 'law of the case' doctrine is 'directed to a court's common sense' and is not an 'inexorable command.' We previously have stated three reasons to reconsider a ruling: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.

*Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (citations and paragraph break omitted) (citing *Coal Res., Inc. v. Gulf & W. Ind.*, 865 F.2d 761, 766, opinion amended on denial of reh'g, 877 F.2d 5 (6th Cir. 1989)). We can quickly dismiss the first two reasons as unavailable in this case — no substantially different evidence was raised on retrial, the only new evidence was that expressly anticipated by the prior panel; and similarly, there has been no subsequent, contrary, controlling authority. We are left with only the third possibility, and it is noteworthy that "clearly erroneous" is not alone sufficient; the decision must also "work a manifest injustice."

Looking at this issue anew, we conclude that our prior decision was clearly erroneous. The earmarking doctrine applies when a replacement creditor steps into the shoes of an existing secured creditor, so that the estate property that was secured by the existing secured creditor is "earmarked"

6

as being secured by the new creditor. In the present case, there was no replacement creditor. Instead, property of the estate was sold to an outside third party to satisfy the existing secured creditor's claim. No replacement creditor means no "earmarking." Thus, we conclude that our prior decision was clearly erroneous, and we must consider whether that clearly erroneous decision would work a manifest injustice.

We conclude that our prior decision would not work a "manifest injustice" because, as the parties agreed, there was no diminution of the estate. It turns out that, by selling the property and satisfying Firstar's claim, Frankie actually made the estate better off. While this could be demonstrated mathematically with actual dollar values, the values do not matter. Once we accept that there was no diminution in value of the estate, the inescapable conclusion is that the remaining claimants are better off (or no worse off) after the transaction than they were before. There is no question that Frankie did not have the legal right to sell this property himself, and therefore he could not obtain Firstar's release without the approval of the trustee and the bankruptcy court. But as a matter of equity, there is no "manifest injustice" in applying earmarking to allow this transaction to stand — no creditor would be disadvantaged, and only the trustee complains.

There would be manifest injustice, however, if we were to avoid the Peoples Bank mortgage and allow the trustee to sell the properties and distribute the proceeds to the unsecured creditors, who would receive a windfall at the expense of Peoples Bank. These proceeds would only exist because Firstar (the primary secured creditor) had released its claim; Firstar only released its claim because it was paid by Peoples Bank; and Peoples Bank only paid Firstar because it obtained a mortgage on the property. To invalidate the mortgage now would be manifestly unjust.

**III.**

We conclude that under the circumstances, we have no basis to reconsider the prior panel opinion and we hold that the bankruptcy and district courts erred by ignoring it. Accordingly, we **REVERSE** the decision of the district court and remand with instructions to apply the earmarking doctrine to the mortgage recorded by Peoples Bank. We emphasize, however, that this holding is based on our inability to justify a reconsideration of a prior decision in this case. Consequently, this holding must be limited to these particular facts and circumstances.